MITTS & MERRILL, INC., Plaintiff,

v.

SHRED PAX CORPORATION and Alvis Kaczmarek, Defendants.

SHRED PAX CORPORATION and Alvis Kaczmarek, Counterclaimants,

v.

MITTS & MERRILL, INC., and Walco National Corp., Counterdefendants.

No. 79–C–3379.

United States District Court,
N.D. Illinois, E.D.

March 7, 1986.

**350**

James J. Hamill, Donald L. Welsh, Fitch, Even & Tabin, Chicago, Ill., John A. Mitchell, Leonard J. Santisi, Theodore F. Shiells, Curtis, Morris & Safford, William J. Butler, New York City, for plaintiff.

Craig O. Larson, Bloomingdale, Ill., Richard C. Bartelt, Michael Dockterman, David L. Hirsch, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

## ORDER

ELAINE E. BUCKLO, United States Magistrate.

Plaintiff, Mitts & Merrill, Inc. ("Mitts"), seeks a declaration that certain patents licensed by it under an exclusive license from defendants, Shred Pax Corporation and Alvis Kaczmarek ("Shred Pax"), are invalid. The patents are for trash shredding and compacting devices. Mitts also seeks a declaration that the machines made by it do not infringe Shred Pax's patents and alleges that Mitts misrepresented the advances supposedly disclosed by the patents and failed to disclose that another manufacturer was making trash shredding devices that were essentially like those licensed by Mitts. Defendants have counterclaimed against Mitts and its parent, Walco National Corp., alleging patent infringement, breach of contract, misappropriation of trade secrets and RICO violations.[1]

There are three motions presently before me. One is Shred Pax's motion for an order compelling production of various documents from plaintiff, Mitts & Merrill, Inc. ("Mitts"). Mitts resists, saying the documents are subject to the attorney-client

---

**1.** Mitts has filed a motion to dismiss certain of these counts.

privilege or work product doctrine, which privileges have not been waived. The documents in question have been submitted for *in camera* inspection by the court. I agree that most of the documents are privileged and that the privilege has not been waived.

Shred Pax also filed two motions seeking disqualification of counsel for Mitts. One motion seeks disqualification of Leonard J. Santisi and the law firm of which he is a partner, Curtis, Morris & Safford, P.C., on the ground that Mr. Santisi "ought to be called as a witness" in the trial of this patent, unfair competition case on behalf of his client. Defendants' second motion seeks disqualification of attorneys William Butler and Stanley Geller as well as their law firm, Butler, Jablow & Geller, as counsel for plaintiff, also on the ground that Mr. Butler "ought to be called as a witness" on behalf of plaintiff. Both motions are denied.

## I.

■ Anticipating that most of the documents, which generally consist of letters to or from Mitts' counsel, will be found privileged, Shred Pax argues that in the context of this litigation the attorney-client privilege has been waived as to any request for legal advice or corresponding response if it dealt with the negotiation of the licensing agreement at issue in this patent litigation, or Mitts' decision to renounce the agreement a year later and bring suit for a declaration of patent invalidity. Basically, Shred Pax's argument is that Mitts obtained a legal opinion as to the validity of the patents in suit in 1978, from Leonard Santisi, a patent lawyer. Having received that opinion, Mitts nevertheless entered into an exclusive license agreement with Shred Pax. Therefore, Shred Pax argues, if Mitts believed the patents were invalid and entered into the license agreement (and a corresponding consultation agreement) anyway, it is estopped from now claiming that it need not pay royalties on the ground that the patents are invalid. On this basis, Shred Pax argues that it is entitled to see all documents relating to the 1978 patent opinion. It argues that Mitts has "waived any privilege with respect to these documents by injecting patent validity and the terms of consideration into issue in this case." (Shred Pax Memorandum in Support of Motion to Compel Production of Documents, p. 2.)

Shred Pax's estoppel argument was specifically rejected by the Supreme Court in *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). In that case, the court reconsidered the question whether a patent licensee should be able to benefit from the licensing agreement and then challenge the patent of its licensor. The court held that the public interest in free circulation of ideas outweighed any state contract doctrine. The licensee must be allowed to challenge the patent and is not required to make any payments while doing so. *Id.* at 669–70, 89 S.Ct. at 1910–11.

There is no real difference between *Lear v. Adkins* and this case. Shred Pax's argument that Mitts "knew" of the supposed invalidity of the patents before entering into the agreement would, if accepted, be made by every patent holder to avoid the holding of *Lear v. Adkins.* At any rate, the court made clear that a patent licensee was perfectly justified in taking out a license and later taking legal action rather than simply copying the patented product and waiting to be sued. *Id.* at 669, 89 S.Ct. at 1910. Shred Pax's "estoppel" argument cannot, therefore, pierce the attorney-client privilege with respect to the documents in question.

Shred Pax seeks to avoid the impact of *Lear v. Adkins* by arguing that in addition to the patent license, Mitts in this case acquired technical know-how, trade secrets and other information essential to manufacturing the shredding machines which Shred Pax would not have provided except for the licensing and consultation agreements. (Second Amended and Supplemental Counterclaim, ¶ 47.) Thus, it argues, the consideration for the licensing and consultation agreement was not the patents. (Second Amended and Supplemental Counterclaim,

¶¶ 50–51.) In addition, Shred Pax argues that it was fraud for Mitts to take out a license and obtain this valuable information if it believed the patents were invalid. On both bases, Shred Pax argues that it must be allowed access to Mitts' privileged documents to prove its contentions.

■ There are two problems with Shred Pax's alternative argument. First, Mitts does not allege, and in fact denies, that it entered into the licensing and consultation agreements to obtain Shred Pax's confidential trade secret information. Mitts alleges that it stopped making payments because (1) the patents are invalid and (2) Shred Pax misrepresented the alleged advances supposedly disclosed by its patents. Since Shred Pax's ability to breach Mitts' attorney-client privilege depends on *Mitts* having waived the privilege, the fact that *Shred Pax* alleges that something other than patents was the basis for the license agreement is irrelevant to this motion to compel.[2]

■ Neither is Shred Pax's fraud argument a basis for piercing the attorney-client privilege in this case. The law is settled that before a privilege will be abrogated on the basis of fraud, the party seeking disclosure must prove "both untruth and materiality." *Mendenhall v. Barber-Greene Co.*, 531 F.Supp. 948, 950 (N.D.Ill. 1981). Mere allegations of fraud, as in this case, are "not sufficient to terminate the attorney-client privilege." *Research Corp. v. Gourmet's Delight Mushroom Co.*, 560 F.Supp. 811, 813 (E.D.Pa.1983).

The documents sought by Shred Pax for which Mitts claims the attorney-client privilege include five letters or memoranda requesting legal services (Exhibit Nos. 1, 5, 8

(page 2), 9, Memorandum 1) and eight letters or memoranda responding to requests for legal advice (Exhibit Nos. 2, 4, 7, 10, 11, 12,[3] Memoranda 2 and 3). These documents are privileged.

■ Exhibit No. 6 is a letter from a German patent agent to Mr. Santisi, Mitts' patent counsel, providing a report on a German patent application, apparently in response to a request from Mr. Santisi. Various courts have treated reports from foreign patent agents in different ways. The better rule, where, as in the present case, "substantive" information regarding foreign law is communicated to the United States lawyer, is that the communication is privileged either because the foreign patent agent is acting as the agent of the United States lawyer or the foreign patent agent is engaged in substantive lawyering which would be held privileged by the foreign country. *Mendenhall v. Barber-Greene Co.*, 531 F.Supp. 951, 954 (N.D.Ill.1982). There has been no attempt to determine German law on the issue, but the communication itself shows that the patent agent was at least acting as Mr. Santisi's agent on this case. Exhibit No. 6 is, therefore, privileged.

■ Exhibit No. 3 consists of a form cover memorandum dated April 26, 1978, indicating that the enclosed document is being sent from Paul D. Schurgot, Jr., to William J. Butler; a letter dated April 7, 1978, from K.J. Hessler, Product Sales Engineer of Peabody Solid Wastes Management, to K.J. Waldecker at The General Industries Company; and 17 pages of specifications and information for a "BEMA–EZ Pack Shredder." The attorney-client privilege protects communications; it does not protect information that is not itself

---

**2.** Shred Pax's argument also ignores the fact that a patentee is required to be specific enough in its description of the patented product that a licensee—or anyone else—can make the patented products without the need for any confidential information. 35 U.S.C. § 112 (1984). Shred Pax is, therefore, on shaky ground arguing that consideration for the licensing and consultation agreements was really confidential information that would allow Mitts to make a

shredding machine from the patents licensed to Mitts.

**3.** While Mitts states in its memorandum that Shred Pax may be claiming that any privilege as to this document was lost by possible inadvertent disclosure of the document, I find no such assertion in Shred Pax's motion and memorandum. It would not at any rate waive the privilege. *E.g., Mendenhall v. Barber-Greene Co.*, 531 F.Supp. 951, 954–55 (N.D.Ill.1982).

privileged. There is no indication that Peabody or General Industries are even related to plaintiff. The memorandum and attached information are not privileged.

■ Exhibit No. 8, apart from the second page which I have held privileged, consists of a letter dated May 9, 1978, from Al Kaczmarek, one of the defendants in this case, to Carl Westergaard, and some "Affidavits for Patent" dated 1973. These documents are not privileged and cannot be made so by their enclosure in a letter from plaintiff to its attorneys.

■ Exhibit No. 13 consists of a letter dated August 9, 1979, from Michael D. Markman of the law firm of Butler, Jablow & Geller to Mr. Santisi and an enclosed D & B report on Shred Pax. The letter itself is simply a cover letter, which is not generally considered privileged. In addition, in this case the letter does not indicate, either by itself or when considered in conjunction with plaintiff's other documents, that it is either responsive to a request for legal advice or that it seeks legal advice. Finally, it is not clear that the letter was written by an attorney or under the direction of an attorney. For each of these reasons, I conclude that the letter is not privileged. The attached D & B report is, of course, not privileged in any event.

■ The last item,[4] identified as Memorandum No. 4, consists of an interoffice memorandum dated July 5, 1979, on Walco National Corp. letterhead, to "JML" from "PDS", with a copy to Mr. Kleinbaum. Plaintiff states that "JML" is J.M. Lyman who plaintiff says is an officer of Mitts. "PDS" is identified as Paul D. Schurgot, identified elsewhere as Mitts' president. Mitts argues that this document is simply the written equivalent of a meeting between Mitts' officers and attorney Kleinb-

aum. I do not read the memorandum as asking for any information; it is simply a report. I conclude that it is not privileged.

## II.

■ Shred Pax's motion for disqualification of plaintiff's counsel in this case is also based on the argument that plaintiff is estopped from arguing the invalidity of the patents in issue since it allegedly believed they were invalid at the time it agreed to become Shred Pax's licensee. With respect to Mr. Santisi, Shred Pax argues that he will be a witness in this case "because he personally investigated the validity of the patents prior to execution of the license and consultation agreements, ..." (Motion for Disqualification of Leonard J. Santisi, ¶ 9.) Shred Pax says he will be examined "on the state of knowledge of Walco and Mitts before the transaction took place." *Id.*

Mitts has stated that Mr. Santisi will not be called as a witness on its behalf. (Plaintiff's Reply Memorandum in Opposition to Defendants' Motion to Disqualify Leonard J. Santisi, p. 6.) Under the ABA Code of Professional Responsibility, an attorney may be disqualified as trial counsel if he will be called as a witness for someone other than his client only if "it is apparent that his testimony is or may be prejudicial to his client." DR5–102(B). Under the new ABA Model Rules of Professional Conduct, adopted in 1983, the test is whether trial counsel "is likely to be a necessary witness." [5] Rule 3.7(a).

Under either test, motions to disqualify chosen trial counsel are not favored. *E.g., Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir.1982). This is particularly true when the motion is based on a notion of what another party "ought"

---

**4.** Plaintiff's memorandum indicates there should be a fifth "Memorandum", but it is not included in the documents produced for *in camera* inspection.

**5.** Much of the argument on these motions has been with regard to which rules—the old Code or the new Model Rules—should apply in this case. Apparently, Illinois has not yet adopted

the new Rules as the applicable standard of conduct for practicing Illinois attorneys. Plaintiff argues that this is irrelevant, because in this federal patent case, federal law applies. I conclude that under either standard, defendants have not shown that Mr. Santisi or his law firm should be disqualified.

to do in terms of choosing its witnesses for trial. *See, May's Family Centers, Inc. v. Goodman's, Inc.,* 590 F.Supp. 1163, 1165 n. 7 (N.D.Ill.1984) (only the party and its counsel can decide who its witnesses will be; thus, "whether 'it is obvious that [the attorney] ought to be called as a witness on behalf of [the party]' is within [the party's] control"). Since Mitts has declared that Mr. Santisi will not be its witness, Shred Pax cannot disqualify him or his firm by second-guessing that decision.

■ Shred Pax's argument that Mr. Santisi must be disqualified because it will call him as a witness is dependent, under the Code, on his testimony being "prejudicial to his clients." But, for reasons discussed above, any testimony Shred Pax might attempt to elicit that could be prejudicial is privileged. Just as Mitts cannot be required, under *Lear v. Adkins,* to prove that it believed the patents valid in order to challenge their validity in this action, and thus cannot be compelled to disclose Mr. Santisi's written opinion on patent validity, so it cannot be compelled to waive its privilege with respect to his oral testimony. Without his privileged testimony, there is simply nothing Mr. Santisi could conceivably be questioned about that would be prejudicial to his client. Under the language of the new rules, he is thus not a "necessary" witness. The motion as to Mr. Santisi's law firm, based on Mr. Santisi's alleged disqualification, fails as well.

### III.

Shred Pax's argument that the other firm and attorneys employed by Mitts, attorneys Butler and Geller, and Butler, Jablow & Geller, should be disqualified from representing Mitts is based on the assumption that the testimony of Butler and former associate, Gerald Kleinbaum, are needed to "resolve any ambiguity" in the consultation agreement entered into in 1978. Shred Pax states that these witnesses also "will be examined on the state of knowledge of [plaintiff] before the transactions" and whether Mitts "knew whether the Shred Pax patents were invalid." (Defendants' Motion for Disqualification, ¶¶ 14, 16, 20; pgs. 3, 4, 5.)

■ Shred Pax's latter argument fails for the reasons stated above. Mitts has not waived its attorney-client privilege and absent a waiver, plaintiff's attorneys cannot be compelled to testify regarding plaintiff's confidential communications.

■ If factually supported, Shred Pax's argument might have more validity with respect to negotiations over an ambiguous document. In this case, however, the persons who negotiated the consultation agreement were apparently attorney Kleinbaum and attorneys for defendants.[6] But Mr. Kleinbaum left the employ of Butler, Jablow & Geller several years ago. His testimony, if needed, cannot cause the disqualification of any of the attorneys named in defendants' motion.[7] *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1294 (2d Cir.1975). Moreover, Mitts does not claim that it stopped payments under the consultation agreement because of any ambiguity in the agreement. It stopped payments because, it alleges, the patents are invalid and they were deceived as to the advances disclosed by the patents.

In summary, Shred Pax has not demonstrated that either Mr. Butler or Mr. Santisi ought to be called as a witness in this case. The motions are, therefore, DENIED. The motion for production of documents is GRANTED to the extent of the

---

**6.** Mr. Butler testified at his deposition that he did not negotiate the contract. Butler dep., p. 252. Defendants argue that because Mr. Kleinbaum worked for Mr. Butler, Mr. Kleinbaum's knowledge is attributed to Mr. Butler. That may be true for some legal purposes, but defendants would surely object if Mr. Butler tried to testify to what happened at a meeting, for example, at which he was not present, on the ground that his testimony was simply hearsay.

**7.** Defendants seek disqualification of Mr. Geller, plaintiff's trial counsel, and the law firm of Butler, Jablow & Geller because Mr. Butler is a member of the firm.

non-privileged documents requested by Shred Pax, as stated in this Order.