S & R, INC., et al., Plaintiffs,

v.

UNLIMITED FINANCING, INC., et al., Defendants.

No. C–3–83–1270.

United States District Court, S.D. Ohio, W.D.

July 31, 1985.

Kenneth R. West, Bethesda, Md., Konrad Kuczak, Dayton, Ohio, for plaintiffs.

James H. McGee, Dayton, Ohio, for defendants Unlimited Financing and Charles L. Ellington.

James F. Barnhart, Dayton, Ohio, for defendants E. James Wampler and Dorfmeier, Stone and Wampler.

## DECISION AND ENTRY ON PENDING MOTIONS; CONFERENCE CALL SET

RICE, District Judge.

The captioned cause is before this Court upon a number of motions. Said motions, the Court's rulings thereon and, whenever deemed necessary, the reasoning behind said rulings, follow:

1. The Motion of the Plaintiff, seeking an Order of the Court compelling discovery and for costs (Doc. # 14), filed April 27, 1984, is sustained in part and overruled in part at this time, subject to being renewed at a specific point in time in the future.

In April, 1984, the Defendant was convicted of 14 counts of a 15-count Indictment returned against him. Sentence was imposed. The Defendant remains free on appeal bond. An appeal is presently pending before the United States Court of Appeals for the Sixth Circuit. At the time of the dictation of this Entry (July 30, 1985), the Government has filed its brief contra the appeal of the Defendant, Charles Ellington.

Although the facts set forth in the Complaint herein are different from those contained in the Indictment against the Defendant Ellington, upon which he was convicted, the Government has been unable, to this point, to give Court and counsel herein any assurance that it did not contemplate future prosecution of the Defendant Ellington, presumably, *inter alia,* for the factual scenario set forth in the within Complaint. As a matter of fact, the latest word from the Government (see attached letter) is that it wishes to await the results of the Defendant's appeal, before deciding whether any further prosecution will be had.

█ In view of the foregoing, in spite of the fact that the Defendant Ellington's claim of the fifth amendment is somewhat broader than either the facts or the law would seemingly allow, this Court must overrule the Motion to Compel Discovery (filed as a means of compelling the Defendant Ellington to respond to questions at his deposition) as it applies to Ellington, but to sustain same as it applies to the Defendant Unlimited Financing. While it is clear that an individual has the right to claim the fifth amendment, in certain circumstances, a corporation has no such right.

Accordingly, it is the Order of this Court, since the Plaintiff's Motion to Compel Discovery has been sustained as it applies to the Defendant Unlimited Financing, that to the extent that discovery can be conducted from said Defendant, through the Defendant Ellington, and based upon corporate records, that a deposition be convened as quickly as may be practicable in order that essential pretrial discovery be completed. To the extent that it is impossible, from a practical standpoint, to elicit discovery from the Defendant Unlimited Financing, without also running the risk of implicating, in a criminal fashion, the Defendant Ellington (really, the sole principal of Unlimited Financing), said deposition may well be less than fruitful for the Plaintiff.

The Plaintiff's request for costs, incurred as a result of out-of-town counsel for the Plaintiff making a special trip to Dayton for an aborted deposition, is deemed by this Court to be not well taken and same is, therefore, overruled in its entirety. It is this Court's understanding that the aborted deposition took place within a week or two of the beginning of Defendant Ellington's criminal trial in the United States District Court for the Southern District of Ohio. Based upon that timing, the Defendant Ellington's taking of the fifth amendment, keeping in mind the practical difficulty of distinguishing between discovery to be conducted from the Defendant Ellington and the Defendant Unlimited Financing, was well taken, given not only the 14 counts of the Indictment upon which the Defendant was to be put to trial (one count was dismissed prior to trial), and further in view of the fact that, even though not part of the indicted counts, the operative facts herein could well have formed the basis for a Government attempt to introduce a like or similar offense, pursuant to Fed.R.Evid. 404(b).

2. The Motion of the Defendant, Dorfmeier, Stone and Wampler, seeking an Order of the Court, pursuant to Fed.R. Civ.P. 21, dismissing said Defendants upon the grounds that they are in effect a nonentity and, therefore, are in no way connected with the facts that gave rise to the Plaintiff's cause of action (Doc. # 19), filed May 23, 1984, is deemed by this Court to be well taken and same is, therefore, sustained in its entirety, based upon the reasoning set forth in the memorandum filed in support of said motion and the attached excerpts from the deposition of the Defendant E. James Wampler. In short, even though said Defendant, Dorfmeier, Stone and Wampler, has filed an Answer to the Plaintiff's Complaint, the Court deems said Answer to not preclude a subsequent motion to dismiss a party defendant. This Court is satisfied, there being no evidence to the contrary, that said Defendant is not a legal entity but is, rather, an office-sharing arrangement consisting of four independent practitioners.

The Defendant, Dorfmeier, Stone and Wampler, is hereby ordered dismissed as a party Defendant to this litigation.

3. The Motion of the Defendant, E. James Wampler, seeking an Order of the Court granting summary judgment in his favor and against the Plaintiff herein (Doc. # 20), is not ruled upon at this time, provided that the Plaintiff comply with Fed.R. Civ.P. 56(f), not later than 20 days from date of receipt of notice of this Decision.

Quite aside from the Defendant's position on the law, to the effect that the moving Defendant cannot be liable under the Plaintiff's counts for fraud and negligence, this Court will not rule upon the merits of the moving Defendant's Motion for Summary Judgment, for the reason that this Court is satisfied that a ruling may well be premature, given the fact that discovery has not yet progressed to the point where all of the facts on the relationship of the Defendant Wampler to the Defendant Ellington and Unlimited Financing are known.[1] Accordingly, the Court will defer ruling upon the moving Defendant's Motion for Summary Judgment, until the close of discovery, *provided* that the Plaintiff file with this Court, not later than 20 days following date of receipt of notice of this Decision, an affidavit, pursuant to Fed. R.Civ.P. 56(f), setting forth not only what discovery needs to be completed before the moving Defendant's Motion for Summary Judgment is ruled upon, but also the outstanding legal and factual issues, remaining to be discovered, which prevent this Court's ruling on this Motion for Summary Judgment at this time. The moving Defendant's counsel will then have 14 days

---

1. Whether the original escrow agent's responsibility is measured by a standard of negligence or merely scienter, the relationship between the Defendant Wampler and the Defendants Ellington and Unlimited Financing must be explored in order to determine whether the Defendant Wampler acted negligently or with scienter. Moreover, as to the fraud count, further discovery on the aforementioned relationship will determine whether the Defendant Wampler knew that what he was representing was false or acted in disregard of its truth or falsity.

following date of receipt of the Defendant's affidavit pursuant to Fed.R.Civ.P. 56(f), within which to file any contra materials deemed necessary.

Assuming, *arguendo*, that this Court defers its ruling on the moving Defendant's Motion for Summary Judgment, Plaintiff's counsel will have 20 days following the discovery cutoff date, within which to file any memorandum contra the moving Defendant's Motion for Summary Judgment. Plaintiff's counsel will then have 7 days within which to file any reply memorandum deemed necessary.

4. The Motion of the Defendants, Unlimited Financing, Inc. and Charles L. Ellington, seeking an Order of the Court granting them leave to file and to serve a Third Party Complaint upon Dr. Evelyn Lagrisson and Douglas E. Brooks (Doc. # 21), is deemed by this Court to be well taken and same is, therefore, sustained in its entirety. Said Third Party Complaint is to be filed by the aforementioned Defendants not later than 14 days from date of receipt of notice of this Decision.

Said ruling is made pursuant to Fed.R. Civ.P. 14.

■ 5. Defendant Wampler's Motion to Dismiss Plaintiff's Counsel (Doc. # 32) is overruled. DR5–102(A) provides, in relevant part:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial.

The Court believes that the partnership relationship of Kenneth West and Ronald West *which existed at the time that Defendant's motion was filed and briefed* would have required Kenneth West's disqualification as counsel for Plaintiff, given the importance of Ronald West's testimony in developing the factual scenario surrounding the transaction at issue in this case and the inapplicability of the excep-

tions to DR5–102(A). The firm in which Kenneth West and Ronald West practiced has since dissolved, however, and both men now practice with different law firms. William Remley, of course, is a former associate of that now-dissolved firm. The Court is not persuaded that DR5–102(A) requires disqualification of counsel when it is "obvious" that a *former* partner or associate "ought" to be called as a witness on behalf of his client. The Second Circuit has observed that "the literal language of DR5–101(B) and 5–102 does not specifically prohibit a firm from appearing as trial counsel where a *former* partner may be a witness. The thrust is to the contrary: or a lawyer *in* his firm." *International Electronics v. Flanzer*, 527 F.2d 1288, 1294 (2d Cir.1975) (emphasis in original) (disqualification not required where former partner is party defendant). In *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704 (6th Cir. 1982), the Sixth Circuit balanced the following three factors in its evaluation of a disqualification motion: the interest of the public in the proper safeguarding of the judicial process, the interests of Defendant, and the interests of Plaintiff. Consideration of these factors leads the Court to conclude that Defendant's motion to dismiss or to disqualify Plaintiff's counsel is not well taken.

The interest of the public, as explained by the *General Mill* Court and Professor Wigmore, turns on the concern that the public may think that the advocate who is also his client's witness is distorting the truth for the sake of his client. The advocate who is able to vouch for his own credibility in summing up before the jury is seen as having a powerful advantage. Settlement and negotiation are also believed to be impeded by the presence of an advocate-witness. As transposed to the situation in this case, the latter three concerns are not implicated, and the issue remaining is whether the public might think that Remley and Ronald West were distorting the truth for the benefit of their former client or, indeed, for their own benefit.[2] Herein,

2. During the deposition of Defendant Wampler,    defense counsel contended that disqualification

however, vigorous cross-examination by defense counsel would certainly be available for impeachment purposes.[3]

In considering the interest of Defendants, *General Mill* establishes that the benefit to defendant which would be obtained if they prevailed upon a disqualification motion is not itself a reason against disqualification. It is also possible that effective cross-examination could turn the former professional relationship between Kenneth West and his witnesses into prejudice against Kenneth West himself instead of working in his favor.

The Court does not believe, and Plaintiff has not argued, that this is the kind of case in which disqualification of Kenneth West would work a substantial hardship on Plaintiff due to the distinctive value of his services. Plainly, Plaintiff has the right to pick his own counsel, a right stressed by Judge Engel in the *General Mill* concurrence and one highlighted by the ABA's Model Rules of Professional Conduct. While the consent of Plaintiff alone would not be sufficient to circumvent the actual strictures of DR5–102(A), in this case, Plaintiff is aware of his counsel's relationship with Ronald West and Remley and apparently has no objections to same.

In sum, a weighing of the relevant factors fails to persuade the Court that disqualification of Plaintiff's counsel is warranted. Accordingly, Defendant's Motion to Dismiss Plaintiff's Counsel is overruled.

Counsel listed below will take note that a conference call will be had at 5:15 p.m. on Wednesday, August 14, 1985, in order to discuss the viability of the trial date of September 16, 1985.

## APPENDIX

U.S. Department of Justice

April 20, 1985

Honorable Walter H. Rice
U.S. District Court Judge
Federal Building
200 W. Second Street
Dayton, Ohio    45202

RE: Charles Ellington

Dear Judge Rice:

Jerry Burke of your office called April 22, 1985 to inquire about the status of a federal investigation of Charles Ellington. The investigation is still in progress. I do not expect to make a determination until the case you tried is resolved by the Sixth Circuit on appeal. (I submitted the appellee brief yesterday).

I will certainly advise your office of any change in status.

Sincerely,
Christopher K. Barnes
United States Attorney
/s/ Ann Marie Tracey
Ann Marie Tracey
Assistant U.S. Attorney

AMT/jmh

---

of Kenneth West is required since (1) it is likely that Plaintiff Rankin will sue Remley for malpractice, and (2) such a malpractice action would also be directed at the now-defunct firm of Kenneth West (Doc. #32, Exh. A at 70–71). To date, the Court has not been apprised of any such malpractice action by Plaintiff.

**3.** *General Mill* teaches that embitterment between counsel impedes the speedy and just resolution of disputes, and that such embitterment is likely to occur when one counsel undertakes to impeach the credibility of opposing counsel in his capacity as witness. 697 F.2d at 712. Defendant urges that the sibling relationship between Kenneth West and Ronald West creates the likelihood of Ronald West's lack of objectivity as a witness. While the Court is not unduly concerned with the latter, given the availability of cross-examination, its confidence in the professionalism of both Kenneth West and Ronald West leads it the availability of cross-examination, its confidence in the professionalism of both Kenneth West and Ronald West leads it also to dispose of the possibility that impeachment of Ronald West would inflame Kenneth West to the extent that damage would occur to the speedy and just resolution of this matter. Defendant cites no section of the Code of Professional Responsibility in support of its concern. The Model Rules, to the extent that they touch upon familial relationships, only provide in Rule 1.8(i) that siblings ought not to represent clients who are directly adverse to one another without the consent of those clients.