# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 97-1006

George Gerdes,                     *
                                   *
            Appellant,             *
                                   *   Appeal from the United States
        v.                         *   District Court for the
                                   *   Northern District of Iowa.
Swift-Eckrich, Inc., doing business as
Armour Foods,                      *
                                   *
            Appellee.              *

Submitted:  June 12, 1997

Filed:  September 11, 1997

Before MURPHY, HEANEY, and NORRIS,[1] Circuit Judges.

HEANEY, Circuit Judge.

George Gerdes appeals from the district court's grant of summary judgment to Swift-Eckrich, Inc. ("Armour") on Gerdes's claim under the Americans With Disabilities Act, 14 U.S.C. § 12101 ("ADA"). We affirm.

---

[1]The Honorable William A. Norris, United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

**I.**

Gerdes began working as a maintenance supervisor at Armour's processing plant in Mason City, Iowa in 1978 and became a maintenance foreman in 1980. In 1991, Gerdes underwent coronary bypass surgery after which he returned to work without restriction. In 1994, Gerdes underwent coronary angioplasty. After he recovered, his physician, Dr. Joseph Cookman, sent a letter to Armour on September 16, 1994 indicating that although Gerdes should continue working, Dr. Cookman "strongly request[ed] and recommend[ed] that [Gerdes] work no more than forty hours per week." (J.A. at 1.)

In October 1994, Armour's Human Resources Manager, Daryl Johnson, wrote to Dr. Cookman inquiring whether Gerdes's forty-hour restriction was temporary or permanent and whether Gerdes should refrain from other activities. (J.A. at 2.) In a letter dated November 8, 1994, Dr. Cookman responded that Gerdes's restrictions were permanent, and that Gerdes should refrain from excessive lifting and "exposure to hazardous work environments such as exhaust fumes, wide temperature variations, and other environmental hazards." (J.A. at 4.) On January 6, 1995, a representative from the Armour Employee Benefits office sent Dr. Cookman Gerdes's job description and solicited Dr. Cookman's opinion on Gerdes's ability to work within the packing plant's environment. (J.A. at 7.) On April 3rd, Dr. Cookman reiterated his opinion that, on a permanent basis, Gerdes should not work more than forty hours a week and that he should avoid exposure to extreme variations in temperature, to noxious fumes, dust and other potentially harmful materials. (J.A. at 15.)

On July 13, 1995, Johnson wrote to Gerdes inquiring whether Gerdes's medical condition had changed. (J.A. at 109.) He also requested that Gerdes meet with Armour representatives to discuss his condition and possible accommodations to assist him in returning to work. Id. In response, Gerdes's attorney wrote to Armour indicating that Gerdes had already provided the information Armour was requesting and

directing the company to send all future inquiries through the attorney. On February 26, 1996, Johnson again requested medical information from Gerdes. Johnson restated the restrictions Dr. Cookman imposed on Gerdes and indicated that "[w]ithout more from Dr. Cookman or others, we must interpret these restrictions literally." (J.A. at 141.) Johnson also expressed Armour's continued desire to assess Gerdes's condition and whether Armour could accommodate Dr. Cookman's restrictions.

On April 8, 1996, Dr. Cookman wrote to Johnson "clarify[ing] [the] recommendations [he] made in the past with respect to Mr. Gerdes'[s] ability to continue working with his coronary artery disease." (J.A. at 143.) While Dr. Cookman indicated that the forty-hour-week restriction remained his principal recommendation for Gerdes, he modified his previous recommendations as follows:

> I did not say then, nor do I say now that Mr. Gerdes can never, ever lift anything heavy or he can never be exposed to cold or an occasional fume. My only recommendation was that this not be a principle [sic] part of his work environment. . . .
>
> . . . . All of my recommendations regarding Mr. Gerdes'[s] number of hours worked as well as exposure to other environmental hazards, have to be given a reasonable interpretation. I certainly think it is acceptable for him to work in the area of 40-45 hours, but I would not want him to work a 50, 60, or 70 hour work-week. . . .

(J.A. at 143-44.) Dr. Cookman likewise indicated that his recommendations regarding Gerdes's exposure to a hazardous work environment needed a reasonable interpretation. Id. He suggested that Gerdes should refrain from "excessive or continuous exposure" to environmental hazards and that Gerdes could minimize the risks associated with such exposure by wearing a mask or appropriate clothing. Id. After receiving Dr. Cookman's April 8th letter, Johnson telephoned Gerdes to inform him that a third-shift maintenance supervisor position was open and asked Gerdes to

meet with Armour representatives about returning to work.  In light of Dr. Cookman's modified restrictions, Armour determined that Gerdes could return to work as a maintenance supervisor, which he did in April 1996.

After obtaining the appropriate right-to-sue letters, Gerdes had previously filed an amended complaint in federal court in November 1995, alleging that Armour had discriminated against him in violation of the ADA.[2]  After discovery, Armour moved for summary judgment.  The district court granted Armour's motion, holding Gerdes was not disabled within the meaning of the ADA.[3]  We affirm.

## II.

Summary judgment is proper only when there are no genuine issues of material fact to be resolved, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  We review a grant of summary judgment de novo, applying the same standard as the district court.  Kaplon v. Howmedica, Inc., 83 F.3d 263, 266 (8th Cir. 1996).  When considering a grant of summary judgment, we view all of the facts in the light most favorable to the nonmoving party.  Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1280 (8th Cir. 1996).

---

[2]The ADA prohibits discrimination "against a qualified individual with a disability because of a disability in regard to . . . the hiring, advancement, or discharge of employees, employment compensation, . . . and other terms, conditions and privileges of employment."  42 U.S.C. § 12112(a).

[3]The district court alternatively held that:  (1) even if Gerdes was disabled under the ADA, his medical restrictions prevented him from being a "qualified individual" as defined by the ADA; and, (2) even were he qualified, Gerdes was primarily responsible for the breakdown in Armour's efforts to "reasonably accommodate" his disability. Because we hold that Gerdes was not disabled within the definition of the ADA, we need not consider these issues.

To establish a prima facie case of discrimination under the ADA, Gerdes must show that he is disabled within the meaning of the ADA,[4] that he is qualified to perform the essential functions of the job with or without accommodation, and that he suffered an adverse employment action from which an inference of unlawful discrimination arises. Webb v. Garelick Mfg. Co., 94 F.3d 484 (8th Cir. 1996). In Webb, we stated:

> The purpose of the ADA is broad and remedial: It is designed to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). . . . A person is substantially limited in the major life activity of working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(I).

Id. at 487. See also Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996) (employee not disabled within meaning of ADA absent evidence showing inability to perform class of jobs or broad range of jobs in various classes); Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995) (although "working" is a major life activity under the ADA, "working" does not mean working at a particular job of that person's choosing). We further stated that, in this context, "the ADA is [fundamentally] concerned with preventing substantial personal hardship in the form of [a] significant reduction in a person's real work opportunities." Webb, 94 F.3d at 488.

---

[4]The ADA includes within the definition of "disabled" a person "regarded" as having "a physical or mental impairment that substantially limits one or more . . . major life activities . . . ." 42 U.S.C. §§ 12102(2)(A), (C).

Gerdes asserts that Armour regarded him as disabled based on the medical limitations he faced due to his heart condition.[5] He argues that Armour's perceptions were erroneous and not based on specific medical information. Moreover, he asserts that the disability Armour perceived would prevent him from engaging in the major life activities of lifting and being exposed to temperature variations and environmental hazards. Armour responds that it based its conduct on Gerdes's actual medical restrictions. Additionally, it attempted to work with Gerdes throughout the period in question to see if his condition had improved or if Armour could accommodate the restrictions imposed by Dr. Cookman.

Under the Webb standard, the district court was justified in finding that Gerdes was not disabled under the ADA, despite the fact that his medical restrictions prevented him from performing all the duties of a maintenance supervisor at a meat packing plant. We addressed a similar question in Wooten, where an employee of a meat packing plant developed a medical condition that prompted his doctor to issue written restrictions of the employee's work activity. Wooten, 58 F.3d at 384. The restrictions limited the employee to "light duty--no work with meat products--no work in cold environment--lifting 10 lbs. frequently 20 lbs. maximum." Id. The employer met unsuccessfully with the employee to gain a better understanding of the employee's limitations, after which the employer discharged the employee, citing the unavailability of jobs that would accommodate the medical restrictions at the plant. Id. After his discharge, the employee filed an ADA claim against his employer. We affirmed a grant of the employer's motion for summary judgment, holding that the employee was not disabled within the meaning of the ADA and that the employer acted based on the doctor's written restrictions on the employee's activities rather than a discriminatory motive or perception that the employee was disabled. Id. at 386.

---

[5]Gerdes does not assert that he is actually disabled, but rests his ADA claim on the premise that Armour regarded him as such.

The facts of this case are nearly identical to <u>Wooten</u>. Armour considered Dr. Cookman's restrictions to prevent Gerdes from working specifically as a maintenance supervisor or foreman as those jobs are performed at Armour. Gerdes presents no evidence to support the assertion that Armour considered Gerdes unable to work at a broad class or broad range of jobs. Armour also considered placing Gerdes in a security guard or warehouse position that would have accommodated his restrictions, but none was available at the Mason City plant. Moreover, Armour made repeated efforts to evaluate Gerdes's condition and, once Dr. Cookman modified Gerdes's limitations, promptly reinstated Gerdes as a maintenance supervisor.

Having failed to show he was disabled as defined by statute, Gerdes does not present a prima facie case of discrimination under the ADA. Therefore, the district court properly granted Armour's motion.

**III.**

Based on the foregoing, we affirm the district court's grant of Armour's motion for summary judgment.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

7