**Joseph MEYER, Plaintiff,**

v.

**IOWA MOLD TOOLING CO., INC., Defendant.**

**No. C 99–3087–MWB.**

United States District Court, N.D. Iowa, Central Division.

May 21, 2001.

Zorica Ilic, Sporer & Ilic, P.C., Des Moines, IA, for Plaintiff.

John S. Schauer, Theresa R. Shea, Seyfarth Shaw, Chicago, IL, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT'S ATTORNEYS; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFF'S MOTION TO DISREGARD DEFENDANT'S REPLY**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................ 977

II. LEGAL ANALYSIS ............................................. 977
   A.   Meyer's Motions ......................................... 977
      1.   Meyer's motion to disqualify IMT's counsel ....................... 977
         a.   DR5–102 ....................................... 978
         b.   Applicable authorities ........................................ 979
         c.   Disqualification in this case .................................... 981
      2.   Meyer's motion to disregard IMT's reply .......................... 982
   B.   IMT's Motion For Summary Judgment ............................... 982
      1.   Standards for summary judgment .................................. 982
      2.   Conduct at issue ............................................. 983
      3.   The telephone accommodation ................................... 985
      4.   Accommodations for meetings and warnings ........................ 985

a.  Job-relatedness of requested accommodations ...................985
b.  Adequacy of accommodations and failure of interactive
    process .............................................................987

III.  CONCLUSION ..................................................................988

## I. INTRODUCTION

In this action, plaintiff Joseph Meyer, who suffers from a profound hearing impairment, asserts that his former employer, Iowa Mold Tooling Co., Inc. (IMT), discriminated against him on the basis of his disability and retaliated against him in violation of federal and state statutes and state common law. Following the court's disposition of IMT's motion to dismiss, Meyer's only remaining claim is that IMT failed to accommodate his disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12201 *et seq.* More specifically, in the pertinent administrative charge, Meyer alleged that IMT failed to accommodate his disability by (1) failing to provide an interpreter for company meetings; (2) failing to provide him with a TTY telephone device; and (3) failing to provide him with safety equipment or warning lights to notify him of emergencies and breaks.

Trial in this matter is currently scheduled to begin on July 9, 2001. However, this matter is presently before the court pursuant to three motions: Meyer's March 7, 2001, motion to disqualify IMT's attorneys and their firm; IMT's March 13, 2001, motion for summary judgment on Meyer's remaining accommodation claim under the ADA; and Meyer's April 13, 2001, motion for the court to disregard as untimely IMT's reply brief and accompanying filings in support of its motion for summary judgment. Each motion was strenuously resisted. However, the only motion on which oral arguments were requested was Meyer's motion to disqualify counsel. Upon review of the motions and the record, and in light of the relatively short time to trial and the court's very crowded calendar, the court has deemed it appropriate to rule on all of the motions presented without oral arguments.

## II. LEGAL ANALYSIS

### A. Meyer's Motions

#### 1. Meyer's motion to disqualify IMT's counsel

■ Meyer's first motion seeks to disqualify IMT's attorneys, Theresa Shea and John S. Schauer, and their firm, Seyfarth Shaw (formerly Seyfarth, Shaw, Fairweather, and Geraldson) of Chicago, Illinois, on the ground that another attorney for the firm, Patricia Hill, ought to be called as a witness in this matter. Specifically, Meyer contends that, in 1995, Hill wrote his counsel a letter, on behalf of IMT, representing that one of the accommodations Meyer had requested, flashing warning lights for alarms and breaks, would be provided within six to eight weeks, but the promised accommodation was never actually made. Meyer contends that, because Hill ought to be called as a witness concerning this promised accommodation, IMT's current attorneys and their firm must be disqualified, if they refuse to withdraw voluntarily, pursuant to Iowa Code of Professional Responsibility Disciplinary Rule (DR) 5–102. It is clear that Meyer's argument for disqualification is premised on his belief that Hill is *currently* a member of defense counsels' law firm. *See, e.g.,* Plaintiff's Motion To Disqualify Defendant's Attorneys And Their Firm, ¶ 2 ("Plaintiff has learned that an attorney *with the firm* of [Seyfarth Shaw] has knowledge of necessary information regarding this claim.") (emphasis added) &

¶ 4 ("Patricia Hill *is* an attorney with Seyfarth Shaw.") (emphasis added); Plaintiff's Memorandum In Support Of Motion To Disqualify, 4 ("Since Patricia Hill *is* a member of the firm of [Seyfarth Shaw], her colleagues Theresa Shea and John S. Schauer should also be disqualified.") (emphasis added) & 6 ("Defendant's attorney Patricia Hill must be called as a witness . . . .").

However, IMT contends that neither DR5–102 nor the interests at its heart are implicated here, because Patricia Hill is no longer associated with Seyfarth Shaw and has not been a member of the firm since August of 1997, a date prior to the filing of the present lawsuit. IMT submits the unchallenged affidavit of the Director of Administration of Seyfarth Shaw averring that Patricia Hill is no longer with the law firm and that her last day of employment was August 21, 1997. Defendant's Response to Plaintiff's Motion To Disqualify Defendant's Attorneys And Their Firm, Exhibit C, Affidavit of Shirley Kitzmann, ¶ 4. Even if the disciplinary rule were applicable, IMT argues that it would not require IMT's counsel to withdraw, because the evidence that Meyer contends Hill must be called to provide is inadmissible and merely cumulative of other evidence concerning the warning lights accommodation. IMT contends further that Meyer should not be allowed to seek disqualification of IMT's counsel on the eve of the filing of summary judgment motions, when Meyer received all of the information giving notice of any reason to call Patricia Hill as a witness at least a year before Meyer filed his motion to disqualify. In the circumstances, IMT contends that compelling it to find new counsel would be unfair and prejudicial.

Meyer has submitted no reply in support of disqualification, notwithstanding that IMT's response demonstrates that he was mistaken as to the factual basis for his motion.

### a. DR5–102

Disciplinary Rule (DR) 5–102 of the Iowa Code of Professional Responsibility provides for "withdrawal as counsel when the lawyer becomes a witness," as follows:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that *the lawyer or a member of the firm* ought to be called as a witness *on behalf of the client,* the lawyer shall withdraw from the conduct of the trial and the firm, if any, shall not continue representation in the trial, except that the representation may continue and the lawyer or member of the firm may testify in the circumstances enumerated in DR 5–101(D)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that *the lawyer or member of the firm* may be called as a witness *other than on behalf of the client,* the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client.

Iowa Code of Professional Responsibility for Lawyers DR5–102 (emphasis added).[1]

---

1. The exceptions to DR5–102(A) enumerated in DR5–101(D) consist of the following:

    (1) If the testimony will relate solely to an uncontested matter.

    (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

    (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm to the client.

Subsections (A) and (B) of the rule provide slightly different standards, depending upon whether it is the client or the opposing party who may call the attorney as a witness: Where the attorney *"ought to be called* as a witness *on behalf of the client,"* withdrawal by the attorney is *mandatory* ("the lawyer *shall* withdraw"), and the firm *"shall not* continue representation," except under enumerated circumstances. *See* DR5–102(A) (emphasis added). However, when the lawyer or member of the firm *"may be called* as a witness *other than on behalf of the client,"* the lawyer and the firm *"may continue* the representation," until a triggering circumstance is discovered, that is, "until it is apparent that the testimony is or may be prejudicial to the client." *See* DR5–102(B) (emphasis added). In this case, IMT contends that it has no intention of calling Patricia Hill as a witness, whereas Meyer contends that he will call Ms. Hill as a witness and that her testimony is "imperative." Thus, the applicable provision of DR5–102, if *any* provision of the rule is applicable in the circumstances, is subdivision (B).

However, ultimately of more interest here is that both portions of the rule plainly apply to the circumstances in which the attorney-witness is *currently* a member of the firm. *See* DR5–102(A) ("the lawyer or a member of the firm") & (B) ("the lawyer or member of the firm"). The rule does not say, for example, "the lawyer or *a past or present* member of the firm." Thus, by its terms the rule does not require disqualification in the circumstances presented here. Indeed, the only authority the court has found expressly considering whether withdrawal or disqualification is required on the basis that a *former* member, associ-

ate, or partner in a law firm is likely to be called as a witness holds that withdrawal is *not* required in such circumstances.

### b. Applicable authorities

For example, in *Mitts & Merrill, Inc. v. Shred Pax Corp.,* 112 F.R.D. 349 (N.D.Ill. 1986), the defendant argued that the plaintiff's attorneys and their firm should be disqualified, based on the assumption that the testimony of one of the partners and a former associate was needed to resolve any ambiguity in a consultation agreement at issue. *See Mitts & Merrill,* 112 F.R.D. at 354. However, the court concluded that only the former associate had negotiated the consultation agreement with the defendant's attorneys, and where that associate "left the employ of [the firm] several years ago" the associate's "testimony, if needed, cannot cause the disqualification of any of the attorneys named in defendant's motion." *Id.* (citing *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1294 (2d Cir.1975)). Moreover, the court noted that the plaintiff had not premised its claim on any "ambiguity" of the consulting agreement, *id.,* apparently suggesting that the testimony of the former associate was unlikely to be relevant.

In *S & R, Inc. v. Unlimited Financing, Inc.,* 625 F.Supp. 1033 (S.D.Ohio 1985), after substantially more analysis of similar circumstances, the court also concluded that withdrawal was not required. Although the court stated that the partnership relationship between a lawyer-witness and counsel for the plaintiff *"which existed at the time that Defendant's motion [to disqualify] was filed and briefed* would have required [the non-witness's] disquali-

---

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case.

Iowa Code of Professional Responsibility for Lawyers DR5–101(D)(1)–(4).

fication as counsel for Plaintiff," at least in light of the "importance" of the attorney-witness's testimony in the case, withdrawal was *not* required, where the partnership had since been dissolved and both partners were practicing for different law firms. *See S & R, Inc.,* 625 F.Supp. at 1036 (emphasis in the original). The court explained as follows:

> The Court is not persuaded that DR5-102(A) requires disqualification of counsel when it is "obvious" that a *former* partner or associate "ought" to be called as a witness on behalf of his client. The Second Circuit has observed that "the literal language of DR5-101(B) [now DR5-101(D) of the Iowa Code of Professional Responsibility] and 5-102 does not specifically prohibit a firm from appearing as trial counsel where a *former* partner may be a witness. The thrust is to the contrary: or a lawyer *in* his firm" *International Electronics v. Flanzer,* 527 F.2d 1288, 1294 (2d Cir.1975) (emphasis in the original) (disqualification not required where former partner is party defendant).

*S & R, Inc.,* 625 F.Supp. at 1036 (emphasis in the original).

Nevertheless, the court in *S & R, Inc.,* also identified the following as relevant factors for evaluating a disqualification motion: "the interest of the public in the proper safeguarding of the judicial process, the interests of Defendant, and the interest of Plaintiff." *Id.* (citing *General Mill Supply Co. v. SCA Servs., Inc.,* 697 F.2d 704 (6th Cir.1982)). The first factor, in turn, involved several concerns:

> The interest of the public, as explained by the *General Mill* Court and Professor Wigmore, turns on the concern that the public may think that the advocate who is also his client's witness is distorting the truth for the sake of his client. The advocate who is able to

vouch for his own credibility in summing up before the jury is seen as having a powerful advantage. Settlement and negotiation are also believed to be impeded by the presence of an advocate-witness. As transposed to the situation in this case, the latter three concerns are not implicated, and the issue remaining is whether the public might think that [the former attorneys] were distorting the truth for the benefit of their former client or, indeed, for their own benefit. Herein, however, vigorous cross-examination by defense counsel would certainly be available for impeachment purposes.

*Id.* at 1036–37 (footnote omitted). As to the interest of the party seeking disqualification—in that case, the defendants—the court rejected any contention that the benefits obtained by prevailing on the motion to disqualify could be reason enough for disqualification; indeed, the court suggested instead that effective cross-examination could turn the former representation to the challenging party's advantage. *Id.* at 1037. As to the interest of the party seeking to retain its counsel, the court found that, in the circumstances, there was no likely hardship, because there was no distinctive value to the representing attorney's services, but the court nevertheless recognized that the plaintiff was entitled to choose its own counsel and had consented to representation even though the plaintiff was aware of its counsel's former relationship to the attorney-witnesses. *Id.* Therefore, weighing all the relevant factors, the court concluded that disqualification was not warranted. *Id.*

In a decision relied on in both the *Mitts* and *S & R* decisions, *International Electronics Corporation v. Flanzer,* 527 F.2d 1288 (2d Cir.1975), the Second Circuit Court of Appeals considered "[t]he narrow issue [of] whether a former partner in a

law firm who is a party defendant in a lawsuit growing out of his former activities as a member of the law firm is barred from retaining the law firm as trial counsel because he will have to be a witness at trial." *Flanzer*, 527 F.2d at 1294. The court concluded that the answer was no. The court noted, first, that DR5–101 and 5–102 "are a recent extension of old Canon 5 which did not disqualify partners of a lawyer-witness from acting as trial counsel"; second, that the literal language of the rules did not apply to a *former* partner or associate, and instead "[t]he thrust is to the contrary: 'or a lawyer in his firm' "; and, third, that the rationale for the rule as protecting the public trust from perceptions that the attorney-witness might distort the truth on behalf of the client or vouch for his own credibility "do not ... apply where the lawyer-witness is not only no longer a member of the firm but is also a party defendant." *Id.* The court, therefore, found "no ethical justification for disqualification of the law firm from representing at trial its former partner ... as a party defendant." *Id.*

The court has found, and the parties have offered, no authority holding that an attorney must be disqualified from representing a party on the basis that a former associate, partner, or member of the attorney's firm will or ought to be called as a witness at trial.

### c. *Disqualification in this case*

Although based on a previous version of DR5–102, the observation of the Second Circuit Court of Appeals that the language of the rule does not apply to the case of a *former* associate or partner in a firm appearing as a witness is no less applicable to the present version of the rule, as noted above. Rather, the language of the rule suggests that it is intended to apply to an attorney-witness who is *currently* a member of the firm. *See* DR5–102(A) ("the lawyer or a member of the firm") & (B) ("the lawyer or member of the firm"); *see also Flanzer*, 527 F.2d at 1294; *S & R, Inc.*, 625 F.Supp. at 1036. Moreover, if the court also applies the three-factor test applied in *S & R*, these factors demonstrate that disqualification is not required in the present circumstances. First, as to public trust and perceptions, concerns that the attorney-witness might distort the truth for the sake of the former client are vitiated where the attorney-witness will be subject to cross-examination, whichever party calls her, and the attorney-witness in this case, because she is no longer associated with the law firm defending IMT, will have no opportunity to vouch for her own credibility or influence settlement and negotiations. *See S & R*, 625 F.Supp. at 1036; *see also Flanzer*, 527 F.2d at 1294. Meyer will not be prejudiced by IMT's continued representation by the former law firm of the attorney-witness, again, because cross-examination (or examination, if Meyer is the party to call Ms. Hill) could turn the former representation to Meyer's advantage. *Id.* at 1037. Finally, as to IMT's interests, the court finds that, although there is no necessarily "distinctive" value to IMT of representation by the attorney-witness's former law firm, there is nevertheless some significant inconvenience that would arise from compelling IMT, at this late date, to find new counsel, and IMT is entitled, in the first instance, to counsel of its choice. *Id.* Moreover, there is something inequitable in imposing the inconvenience of finding new counsel on IMT at this point in the litigation, where, as IMT represents, and Meyer does not dispute, Meyer had notice of the supposed representation issue long before he brought the motion to disqualify, and the timing of the motion smells more of gamesmanship than concern for the ethical standards of the profession.

Therefore, finding no support in the language of DR5–102 for its applicability to the circumstances presented, recognizing the decisions holding that disqualification was not required in comparable circumstances, and finding further that Meyer has not attempted to identify any authority in support of disqualification once his misconception that the attorney-witness was *currently* a member of defense counsels' law firm was corrected, Meyer's motion to disqualify defense counsel will be denied without oral argument.

### 2. Meyer's motion to disregard IMT's reply

█ Next, Meyer has moved the court to disregard IMT's response to his statement of undisputed facts and IMT's reply memorandum in support of its motion for summary judgment, on the ground that IMT's reply materials were untimely. However, this motion will also be denied. IMT's reply in support of its summary judgment motion was either timely, pursuant to N.D. IA. L.R. 56.1(d), or if technically late, its tardiness caused no prejudice to Meyer and the technical error was plainly inadvertent, without the merest hint of any intention to delay the proceedings or prejudice Meyer. *See Larson v. Farmers Coop. Elevator of Buffalo Center, Iowa,* 58 F.Supp.2d 1013, 1017–1018 (N.D.Iowa 1999). The court has therefore considered IMT's reply materials in its disposition of IMT's motion for summary judgment.

### B. IMT's Motion For Summary Judgment

### 1. Standards for summary judgment

As to IMT's motion for summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

Rule 56.   Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a) & (c) (emphasis added). In reviewing the record on a motion for summary judgment, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick v. Donaldson Co.,* 90 F.3d 1372, 1377 (8th Cir.1996) (same). Where the movant has met its "initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue," *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Rose–Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993), the party resisting the motion must go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel.*

*United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir.1995). The resisting party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allison*, 28 F.3d at 66.

### 2. *Conduct at issue*

■ In its motion for summary judgment, IMT first asserts that Meyer's failure-to-accommodate claim can only be based on conduct between May 23, 1993, and March 18, 1994, that is, conduct within the 300-day "window" prior to the filing of his first administrative charge alleging failure to accommodate his disability. This is so, IMT argues, because the court has already concluded, in its ruling on IMT's motion to dismiss, that Meyer's claims based on a second administrative charge regarding conduct after March 18, 1994,

were not timely filed. The court does not agree.

■ It is true that a plaintiff's claim is time-barred if the plaintiff filed his or her EEOC charge more than 300 days after the effective date of the employer's unlawful actions. *See Boersig v. Union Elec. Co.*, 219 F.3d 816, 821 (8th Cir.2000) (citing 42 U.S.C. § 2000e-5(e)(1), which is applicable to ADA claims under 42 U.S.C. § 12117(a)), *cert. denied*, —— U.S. ——, 121 S.Ct. 857, 148 L.Ed.2d 771 (2001). Furthermore, in the first instance, courts consider only conduct within the 300-day limitations period before the administrative charge was filed as falling within the scope of the administrative charge. *See Klein v. McGowan*, 198 F.3d 705, 709-10 (8th Cir.1999) (considering only conduct within the 300-day limitations period as falling within the scope of the administrative charge). However, the Eighth Circuit Court of Appeals has instructed that "'the sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC's investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir.2000) (quoting *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir.1988) (citation omitted)). Although "[a]llegations outside the scope of the EEOC charge ... circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed," *Kells*, 210 F.3d at 836; *see also Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir.1994), discriminatory or retaliatory conduct after the filing of an administrative charge or judicial complaint is also actionable if it "'grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Kells*, 210 F.3d at 836 (quoting *Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 887 (8th Cir.

1998)); *see Wallin v. Minnesota Dep't of Corrections,* 153 F.3d 681, 688 (8th Cir. 1998), *cert. denied,* 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Philipp v. ANR Freight Sys., Inc.,* 61 F.3d 669, 676 (8th Cir.1995). Indeed, "[t]here is authority that the reasonably related test only applies to satisfy exhaustion of acts occurring *subsequent* to the filing of the administrative charge." *Woodcock v. Montefiore Med. Hosp.,* 48 F.Supp.2d 231, 235 n. 4 (E.D.N.Y.1999) (emphasis added) (collecting cases); *see also Fitzgerald v. Henderson,* 36 F.Supp.2d 490, 502 (S.D.N.Y.1998) (collecting cases). Thus, the question is not whether the conduct on which Meyer's failure-to-accommodate claim is in part based occurred after March 18, 1994—that is, whether it is subsequent to the filing of Meyer's first EEOC charge—but whether it "'grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Kells,* 210 F.3d at 836 (quoting *Nichols,* 154 F.3d at 887). In this case, conduct after March 18, 1994, that involved attempts (or failures) to accommodate Meyer's disability with respect to company meetings, telephone accessibility, and emergency or break warnings certainly grows out of or is like or reasonably related to the substance of the allegations in the March 18, 1994, administrative charge, which raised these same issues. *Id.*

■ Nor does the fact that Meyer's claims pursuant to a second administrative charge, filed on February 26, 1996, are time-barred somehow limit the period for actionable failure-to-accommodate conduct. The time bar on claims in the second administrative charge can't apply to claims arising from conduct that "'grows out of or is like or reasonably related to the substance of the allegations in the [first] administrative charge'" on which a timely

judicial complaint was filed. *Cf. Kells,* 210 F.3d at 836 (quoting *Nichols,* 154 F.3d at 887). To put it another way, the first administrative complaint exhausted all failure to accommodate claims as to subsequent "like or reasonably related" conduct, for purposes of a timely judicial claim, while untimely filing of the judicial claim as to the second administrative charge barred only claims not *otherwise* exhausted and preserved for judicial consideration.

■ Two other points are worth mentioning. First, IMT's argument would frustrate the remedial purposes of the ADA by foreclosing judicial consideration of conduct that is actionable on the basis of the first administrative charge on the ground that the plaintiff failed to file suit in time as to a second administrative charge, *even though the second administrative charge was not necessary to put that conduct at issue in the judicial proceedings. See Kells,* 210 F.3d at 836 ("In determining whether an alleged discriminatory act falls within the scope of a discrimination claim, the administrative complaint must be construed liberally in order not to frustrate the remedial purposes of the ADA and the ADEA.") (internal quotation marks, citations, and emendations omitted). Second, even if conduct after March 18, 1994, is not itself actionable, it would still be relevant evidence of failure to accommodate, just as conduct that occurred before the 300-day "window" remains relevant, even if it is not actionable. *See, e.g., Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.,* 130 F.3d 349, 356 (8th Cir.1997) ("The evidence of incidents before 1992 [*i.e.,* outside the limitations period for a timely administrative charge] ... was relevant in resolving the ultimate question of whether the workplace at Dr. Pepper was so racially abusive and hostile that a reasonable employee would feel compelled to quit his job," even though

those incidents were not themselves actionable, because they were time-barred). Thus, the conduct properly at issue is failure to accommodate Meyer's disability with regard to company meetings, telephone accessibility, and break and emergency warnings from May 23, 1993, until the termination of his employment.

### 3. The telephone accommodation

Regardless of the time boundaries for actionable conduct, IMT asserts that it provided Meyer with one of the specific accommodations he requested, a TTY telephone, and that Meyer was satisfied with this accommodation. *See* Defendant's Statement Of Undisputed Material Facts In Support Of Defendant's Motion For Summary Judgment, ¶ 49. Meyer has not disputed this contention. Thus, as to this portion of his failure-to-accommodate claim, Meyer has failed to meet his burden to designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka*, 122 F.3d at 562; *McLaughlin*, 50 F.3d at 511; *Beyerbach*, 49 F.3d at 1325. Therefore, IMT's motion for summary judgment on Meyer's failure-to-accommodate claim will be granted to the extent that the claim is based on failure to provide an adequate telephone system to accommodate Meyer's hearing disability.

### 4. Accommodations for meetings and warnings

#### a. Job-relatedness of requested accommodations

██ IMT argues, however, that it is entitled to summary judgment on the remainder of Meyer's alleged failures to accommodate his disability, because neither the requested accommodation of an interpreter for company meetings nor the requested accommodation of flashing warning lights for emergencies or breaks was job-related. The court concedes that there is, at least by implication, a "job-relatedness" requirement for all accommodations in disability cases, in that the question of the employee's "qualification" in such cases is whether the employee can perform the "essential functions" of the job in question, either with or without reasonable accommodation. *See, e.g., Heaser v. Toro Co.*, 247 F.3d 826, 828 (8th Cir.2001) ("To be a qualified individual within the meaning of the ADA, [the plaintiff] must (1) possess the requisite skill, education, experience, and training for her position; and (2) be able to perform the essential job functions, with or without reasonable accommodation. *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 786–87 (8th Cir.1998)."); *see also La-Chance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir.1998) ("An 'accommodation' is 'reasonable'—and, therefore, required under the ADA—only if it enables the employee to perform the essential functions of the job.") (citing 29 C.F.R. § 1630.2(*o*)(2)(ii)(1995)). Similarly, the Eighth Circuit Court of Appeals has held that an employer is not required to "accommodate" a disabled employee by eliminating essential functions of the employee's job. *See Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 950 (8th Cir. 1999) (an employer is not required to reallocate or eliminate essential functions of a job to accommodate a disabled employee). As the Eighth Circuit Court of Appeals recently explained, "Although an ADA plaintiff retains the ultimate burden of proving that she is a qualified individual, an employer who disputes the plaintiff's claim that she can perform the essential functions of a job must put forth evidence establishing those functions." *Id.* (citing *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1113 (8th Cir.1995)).

IMT contends that the Eighth Circuit Court of Appeals has made clear that accommodations unrelated to an employee's ability to perform his or her job are simply not required by the ADA, citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir.1999), *cert. denied,* 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). In *Kiel,* the court concluded that "[a]n interpreter was not required for [a hearing impaired employee] to perform the essential functions of his position, and on the one occasion that a training session was relevant to Kiel's position, Select provided him an interpreter." *Id.* at 1137. Therefore, summary judgment was proper on Kiel's failure to accommodate claim. *Id.* Similarly, IMT contends that the plant-wide meetings for which Meyer wanted an interpreter covered no information relevant to work rules, policies, or practices, and that whether or not Meyer received warnings of emergency or break alarms had nothing to do with his ability to do his job. Thus, IMT contends that it was not required to provide the requested accommodations. However, the court finds that Meyer has met his burden to designate "specific facts showing that there is a genuine issue for trial" on the question of whether or not meetings and alarms were related to essential functions of his job. FED. R. CIV. P. 56(e); *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka,* 122 F.3d at 562; *McLaughlin,* 50 F.3d at 511; *Beyerbach,* 49 F.3d at 1325. Meyer contends that the meetings for which he requested an interpreter were *mandatory* and involved meetings with supervisors, job performance meetings, policy meetings, procedural meetings, safety meetings, personnel meetings, departmental meetings, plant-wide meetings, sexual harassment training, and meetings regarding disciplinary actions. The court notes that, in particular, Meyer asserts that he was required to attend sexual harassment training and a quality control meeting, but no interpreter was provided for either meeting. Although these meetings may not have involved Meyer's performance of the specific tasks allotted to his position, they nevertheless involved either legal mandates for workplace conduct—in the case of sexual harassment training—or goals and policies, and perhaps more specific requirements, related to his position—in the case of quality control meetings. As the Eighth Circuit Court of Appeals recently explained in *Heaser,*

> An essential function may be established by evidence that includes:
>> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.
>
> *Moritz,* 147 F.3d at 787 (internal quotation marks omitted).

*Heaser,* 247 F.3d at 828–29. If meetings are *mandatory,* that requirement suggests that the employer's judgment is that they comprise an essential function of *all* of the positions of employees required to attend. *See id.* (first factor). Similarly, if the consequences for non-attendance or failure to comply with requirements and policies set forth at such meetings can include discipline or termination, that also suggests that such meetings are essential functions of all positions to which they relate. *Id.* (fourth factor). Meyer alleges that he suffered discipline on several occasions owing to his lack of awareness or misunderstanding of policies and directives explained to hearing employees at such meetings. The court finds that Meyer has generated a jury question on whether the accommodations he requested were job-related.

### b. Adequacy of accommodations and failure of interactive process

██ IMT contends that, even if the requested accommodations were job-related, IMT provided reasonable accommodations, and Meyer unreasonably rejected them. Specifically, IMT points out that its human resources director attempted to accommodate Meyer's desire for an interpreter at company-wide meetings by attempting to obtain an interpreter, and when that could not be arranged in time, by providing Meyer with typewritten notes on the meetings and the opportunity to discuss the notes with her. IMT points to undisputed evidence that, after the second such meeting at which the human resources director took notes for Meyer, Meyer simply threw the notes at her and walked out of her office, instead of going over the notes with her. IMT also points out that a good share of the material presented at such meetings consisted of "visual content" that Meyer could comprehend without an interpreter. IMT also contends that its experience with Meyer was that he could read lips adequately to follow such meetings, if he sat in the front row, but that Meyer refused to attempt such an accommodation for more than a few minutes. As to warnings of emergencies and breaks, IMT points to its attempts to accommodate Meyer's concerns by setting up an informal, then a formal "buddy system" of employees to notify him when alarms were sounding, and its further attempt to solve the problem by giving Meyer a vibrating pager that would go off when alarms sounded. Although Meyer contends that none of these accommodations was effective, IMT contends that Meyer failed to provide feedback to help IMT determine what changes needed to be made and instead simply was uncooperative with employees who tried to notify him of breaks and alarms and stopped using the pager without comment.

██ First, the court agrees with IMT that Meyer is not entitled to whatever accommodations he desired, but only to "reasonable" accommodations. *See, e.g., Kiel,* 169 F.3d at 1137 (although the employee requested a TDD device to make the minimum number of client calls required in his position, "Select chose to have Kiel's supervisor make the minimal number of client telephone calls that were required [and][t]his accommodation allowed Kiel an equal employment opportunity at Select"); *see also Kells,* 210 F.3d at 833 ("An accommodation is simply some change or modification in the work environment which allows an individual with a disability to participate on an equal footing with non-disabled employees." 29 C.F.R. § 1630.2(*o*)(1)(iii). Reasonable accommodations might include special training, restructured work schedules, or modifications of workplace equipment and devices. 42 U.S.C. § 12111(9)(B); *see, e.g., Valentine v. American Home Shield Corp.,* 939 F.Supp. 1376, 1399 (N.D.Iowa 1996) (listing part-time employment as a potential reasonable accommodation). Proposed accommodations which would involve significant expense or difficulties upon the employer's operation of its business constitute an 'undue hardship' and need not be implemented. 42 U.S.C. §§ 12112(b)(5)(A), 12111(10)."); *Cravens v. Blue Cross and Blue Shield of Kansas City,* 214 F.3d 1011, 1019 (8th Cir.2000) ("[T]he employer is not obligated to provide the accommodation requested or preferred by the employee; the reassignment need only be a "reasonable" accommodation. *See* 42 U.S.C. §§ 12111(9), 12112(b)(5)(A); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir. 1996)."). Moreover, both parties are obligated to engage in an "interactive process" to determine what accommodations are available and reasonable. *See, e.g., Gerdes v. Swift–Eckrich, Inc.,* 949 F.Supp. 1386, 1404–05 (N.D.Iowa 1996) ("The federal

regulations implementing the ADA state: [']To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.['] 29 C.F.R. § 1630.2(*o*)(3) (1995). But the regulations envision an interactive process that requires participation by both parties: ['][T]he employer must make reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.['] 29 C.F.R., pt. 1630, app.; *see also Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 677 (1st Cir. 1995)."), *aff'd*, 125 F.3d 634 (8th Cir.1997).

However, the court again concludes that Meyer has met his burden to designate "specific facts showing that there is a genuine issue for trial" on the questions of the reasonableness of proffered accommodations and the adequacy of his participation in the process to determine what accommodations were required. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka*, 122 F.3d at 562; *McLaughlin*, 50 F.3d at 511; *Beyerbach*, 49 F.3d at 1325. While IMT focuses on the adequacy of the note-taking and discussion procedure used by the human resources director when she was unable to obtain an interpreter for a company-wide meeting, Meyer's claim of failure to accommodate him in company meetings goes beyond the occasional company-wide meetings. While a reasonable jury could certainly find that, by throwing notes back at the human resources director, Meyer failed to participate in good faith in the interactive process, a jury could also find that IMT failed to engage in the interactive process in good faith when a supervisor shouted in Meyer's face that he should just read his lips when Meyer requested an interpreter for a quality control meeting. Moreover, Meyer has pointed to evidence that note-taking and lip-reading did not adequately convey all of the essential information from all of the pertinent meetings, as well as evidence that the "buddy system" and the pager did not work. These incidents, and others identified in the record, generate genuine issues of material fact as to the adequacy of the proffered accommodations and the parties' good faith in pursuing the "interactive process."

Therefore, except as to the requested accommodation for a telephone with a TTY or TDD system, which was actually provided, IMT's motion for summary judgment on Meyer's failure-to-accommodate claim will be denied.

### III. CONCLUSION

Meyer's March 7, 2001, motion to disqualify IMT's attorneys and their firm is **denied.** Contrary to the premise of Meyer's motion, the attorney-witness Meyer contends ought to be called in the trial of this matter is no longer a member of IMT's attorneys' firm. The court finds no support in the language of DR5–102 for its applicability to the circumstances of a *former* associate appearing as a witness, decisions addressing comparable circumstances hold that disqualification is not required in such circumstances, and Meyer has not come forward with any authority requiring disqualification in the circumstances that actually obtain here. Similarly, Meyer's April 13, 2001, motion for the court to disregard as untimely IMT's reply brief and accompanying filings in support of its motion for summary judgment is **denied.** IMT's reply in support of its summary judgment motion was either timely, pursuant to N.D. IA. L.R. 56.1(d), or if technically late, its tardiness caused

no prejudice to Meyer, the technical error was plainly inadvertent, and there was no intent to prejudice Meyer or delay the proceedings.

IMT's March 13, 2001, motion for summary judgment on Meyer's remaining accommodation claim under the ADA is **granted in part and denied in part.** The motion is granted as to the requested accommodation for a telephone with a TTY or TDD system, which was actually provided. However, it is denied as to the requested accommodations for meetings and warnings of breaks and emergencies, because Meyer has generated genuine issues of material fact as to the job-relatedness of the requested accommodations, the reasonableness and adequacy of IMT's proffered accommodations, and the relative responsibility of the parties for the breakdown of the interactive process for determining reasonable accommodations.

**IT IS SO ORDERED.**