**Gloria WOODCOCK, Plaintiff,**

v.

**MONTEFIORE MEDICAL CENTER, The University Hospital of the Albert Einstein College of Medicine, Comprehensive Family Care Center, Defendant.**

No. 98–CV–4420 (ILG).

United States District Court,
E.D. New York.

March 11, 1999.

Charmaine M. Stewart, Elmont, NY, for Plainiff.

Christopher A. D'Angelo, Nixon, Hargrave, Devans & Doyle, New York City, for Defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

In this Title VII action, plaintiff Gloria Woodcock ("Woodcock"), an American citizen of Panamanian origin, claims discrimination based on race and national origin. Defendant Montefiore Medical Center ("Montefiore") now moves to dismiss portions of plaintiff's First, Second and Third Causes of Action, and the Fourth Cause of Action in its entirety pursuant to Rules 12(b)(1), 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion is granted.

## BACKGROUND

On July 1, 1989, Woodcock was hired by Montefiore as a Patient Care Coordinator for the Pediatric Unit of the hospital's Comprehensive Family Care Center.[1] She remained in that position until she resigned on July 3, 1996. In her letter of resignation, she states the following:

> I have enjoyed my association with Comprehensive Family Care Center for the past twenty two years. I have grown professionally and the cohesive working relationship which I have experienced with other departmental staff in addition to the family-like atmosphere

---

1. Woodcock had previously been employed for fifteen years by Yeshiva University's Albert Einstein College of Medicine, Montefiore's teaching hospital.

we shared, is something I will carry with me for a very long time. It has been a pleasure caring for my patients, their children, grandchildren, and watching them develop over the years.

However, the mandated changes in my working conditions and the increase in my traveling time aggravates a pre-existing physical condition which makes it difficult for me to continue my association with CFCC. In addition, it has been and continues to be increasingly difficult for me to take my vacations appropriately due to staff shortage.

Therefore, I am resigning my position as the Patient Care Coordinator of Pediatrics. . . . Effective July 3, 1996.

Exhibit 4 to Answer.

Despite the glowing assessment of her employment relationship with Montefiore, plaintiff filed a charge of discrimination directly with the New York State Division of Human Rights ("NYSDHR") on April 9, 1997, alleging that Montefiore discriminated against her on the basis of her national origin in violation of Title VII 42 U.S.C. § 2000e, *et seq.* and New York's Human Rights Law (N.Y.Exec.Law § 290, *et seq.*). *See* Exhibit B to Answer. That agency forwarded plaintiff's complaint to the Equal Employment Opportunity Commission ("EEOC"), which actually investigated the claim and ultimately issued plaintiff a "Right to Sue" letter.

Woodcock then filed the present action, which, in addition to the charge of national origin discrimination alleged in her NYSDHR complaint, alleges discrimination based on her race and ethnicity in violation of Title VII, New York's Human Rights Law and 42 U.S.C. § 1981, and a claim for breach of contract.

Regarding the discrimination complained of, plaintiff alleges that her former supervisor, Joann Richardson, began to harass her in July 1995 "by making derog-atory remarks about 'people from the Island' and by speaking to [her] in a[n] unprofessional manner using many profanities." Compl. ¶ 7. Plaintiff claims that these alleged comments triggered a preexisting asthmatic condition which was in remission, and aggravated a lymph edema, thereby forcing her to resign. *Id.* ¶¶ 10, 13.

Defendant now moves to dismiss: (1) those portions of the First and Second Causes alleging racial discrimination and violations of the Human Rights Law asserting that this Court lacks jurisdiction to hear those claims; (2) the Third Cause of Action, premised upon a violation of 42 U.S.C. § 1981 to the extent it is based on national origin discrimination; and (3) the Fourth Cause of Action for breach of contract in its entirety.

## DISCUSSION

### A. *Standard for Motion to Dismiss*

At the outset, plaintiff argues that defendant's motion to dismiss should be converted into a motion for summary judgement due to their inclusion of materials outside the pleadings. However, the materials to which plaintiff refers were attached to defendant's answer, i.e., a pleading and relate to matters referenced in the Complaint.[2] *See* Fed.R.Civ.P. 10(c) ("Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). In any event, on a motion pursuant to Fed. R.Civ.P. 12(b)(1) challenging a district court's subject matter jurisdiction, although the court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdic-

---

**2.** Those exhibits, attached to Defendant's Answer with Affirmative Defenses, are: Montefiore's Collective Bargaining Agreement with the N.Y. Nurses Assoc., plaintiff's charge of discrimination with the NYSDHR, plaintiff's resignation letter and the EEOC's charge of discrimination.

tion, *see Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992), "the court may [also] resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Antares Aircraft v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), vacated on other grounds, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *see also Guadagno v. Wallack Ader Levithan Assoc.*, 932 F.Supp. 94, 95 (S.D.N.Y.1996) (On a motion to dismiss under Fed. R.Civ.P. 12(b)(1), district court may decide the jurisdictional matter on the basis of affidavits and other submissions to the court). As such, this motion is properly before the court as a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure.

**B.** *Plaintiff's Race Discrimination Claim*

Woodcock's First and Second Causes of Action allege discrimination on the basis of race and of national origin in violation of Title VII. Defendant argues that this Court lacks jurisdiction to hear that aspect of the Complaint alleging racial discrimination because it was not contained in plaintiff's charge of discrimination filed with the NYSDHR and is not reasonably related to the allegations in that charge. Defendant is correct.

■ In this Circuit, the clear rule is that "[a] district court only has jurisdiction to hear Title VII claims that are either included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charged." *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993); *see also Wilson v. Fairchild Republic Co.*, Inc., 143 F.3d 733, 739 (2d Cir.1998).

In *Butts*, the Second Circuit recognized three different situations where claims not alleged in an EEOC charge are reasonably related to the allegations in the charge so as to provide jurisdiction: (1) if the claim brought in the civil action concerns conduct which would fall within the reasonable scope of the EEOC investigation; (2) where the claim alleges retaliation for filing the EEOC charge; or (3) where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Butts*, 990 F.2d at 1402–03.

■ Of these three circumstances, only the first has relevance.[3] This type of claim, which essentially involves "an allowance of loose pleading," *Butts*, 990 F.2d at 1402, does not encompass claims alleging discrimination on a basis entirely different from that involved in the EEOC charge. *Richards v. New York City Police Dep't*, 1999 WL 33288, at *7 (S.D.N.Y. Jan. 25, 1999); *see also Peterson v. Insurance Co. of N. America*, 884 F.Supp. 107, 109 (S.D.N.Y.1995) ("[C]ourts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge."). Indeed, such is the case here. Plaintiff's properly alleged claim for discrimination based on national origin is wholly different from a claim of race discrimination. *Mathura v. Council for Human Services Home Care Services, Inc.*, 1996 WL 157496, at *2 (S.D.N.Y. April 2, 1996) (a claim of national origin discrimination is "wholly different" than a claim of race discrimination), aff'd, 107 F.3d 3 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 93, 139 L.Ed.2d 49 (1997); *see also Cordero v. Heyman*, 1998 WL 730558, at *5 (S.D.N.Y. Oct.19, 1998) (same); *Narvarte v. Chase Manhattan Bank, N.A.*, 969 F.Supp. 10, 12–13 (S.D.N.Y.1997) (same).

Nothing in plaintiff's complaint filed with the NYSDHR suggests that defen-

---

**3.** The other two situations are inapplicable because: (1) plaintiff filed her charge with the NYSDHR after she resigned, there could thus be no retaliation against her for filing it; and (2) the Complaint fails to allege any further incidents of discrimination carried out in precisely the same manner as those alleged in the NYSDHR charge.

dant discriminated against her on account of her race. In fact, that complaint does not even mention plaintiff's race. Under these circumstances, one cannot say that the scope of the EEOC investigation would reasonably grow into an inquiry concerning race discrimination. The two claims are therefore not reasonably related and the race claim is dismissed.[4]

### C. Allegations Barred By 300 Day Statute of Limitations

Defendant also correctly contends that plaintiff's allegations of discriminatory conduct occurring prior to June 13, 1996 are barred by Title VII's 300 day statute of limitations. Under Title VII, a charge of discrimination must be filed "within 300 days after the alleged discrimination...." 42 U.S.C. § 2000e–5(e); *see also Campbell v. Grayline Air Shuttle*, 930 F.Supp. 794, 798 (E.D.N.Y.1996) ("[a]s a condition precedent to bringing a Title VII action, a plaintiff must file a complaint with the [EEOC] within 300 days of the discriminatory act....").

Plaintiff filed her charge of discrimination with the NYSDHR on April 9, 1997. Thus, the Complaint may only encompass those allegations based on event occurring after June 13, 1996, 300 days earlier. *See Campbell*, 930 F.Supp. 794, 799 (E.D.N.Y. 1996) ("The 300–day time period within which a complainant may file an EEOC charge begins to run when the plaintiff first receives notice of the employment decision at issue."). As such, to the extent the Complaint is based on allegations occurring before June 13, 1996, those claims are dismissed.

■ In opposing this argument, plaintiff avers that the limitations period is tolled under the "continuing violation" theory of discrimination, *see* Pl.Mem. of Law at 5, which extends the limitations period for all claims of discriminatory acts committed under an ongoing policy or practice of discrimination, even if those acts, standing alone, would have been barred by the statute of limitations. *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997). However, no such claim is presented in either the NYSDHR complaint or the complaint in this action. Nor does plaintiff explain why her newly asserted claim of continuing violation should be excused from the requirement of presenting such a charge in those documents. In any event, plaintiff's allegations—that her supervisor disliked "people from the Island."—are grossly inadequate to support such theory. *See Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994) (to present a viable claim for a continuing violation, "plaintiff must present proof of specific on-going discrimination ... for so long as to amount to a discriminatory policy or practice.").

### D. Plaintiff's Human Rights Law Claim

The Complaint also alleges discrimination in violation of sections 296 and 297 of

---

4. Notably, plaintiff's allegations of race discrimination occurred in July 1995, *see* Compl. ¶ 7, prior to her July 3, 1996 resignation and to the filing of her complaint with the NYSDHR on April 9, 1997. As one court recently noted, "there is authority that the 'reasonably related' test only applies to satisfy exhaustion of acts occurring subsequent to the filing of the administrative charge. [citations omitted]. However, this issue appears unsettled. While Butts distills a test that by its terms applies only to post-EEOC filing conduct, the Butts opinion, in fact, analyzed the pre-EEOC allegations under the reasonably related test." *Fitzgerald v. Henderson*, 36 F.Supp.2d 490 (N.D.N.Y.1998) (citing *McNight v. Dormitory Auth. of the State of New York*, 995 F.Supp. 70, 76 (N.D.N.Y. 1998)). Based on a plain reading of the test articulated in *Butts* —"[a] district court only has jurisdiction to hear Title VII claims that are either included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charged,"—this Court also lacks jurisdiction to hear plaintiff's race discrimination claim because it is based on conduct that occurred prior to the filing of an EEOC charge. *Butts*, 990 F.2d at 1401; *see also Branch v. Sony Music Entertainment, Inc.*, 1999 WL 20866 (S.D.N.Y. Jan.19, 1999) (dismissing claim of gender discrimination based on event occurring prior to filing of EEOC charge).

New York's Human Rights Law. Section 297 of the Human Rights Law, the so-called election of remedies provision, provides that:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder or with any local commission on human rights.

N.Y.Exec.Law § 297(1) (McKinney 1993). "Once a plaintiff has elected an administrative remedy by filing a complaint with the [NYSDHR], subsequent judicial action based on the same incident is barred unless the administrative proceedings were terminated for 'administrative convenience.'" *Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995); *see also Pustilnik v. Hynes*, 1998 WL 813411, at *7 (E.D.N.Y. July 21, 1998).

■ Plaintiff's filing of Human Rights Law claims directly with the NYSDHR prior to the commencement of this action and the fact that those proceedings were not terminated for "administrative convenience," bars her claims here. The New York Human Rights claims are, therefore, dismissed as well.

E. *Plaintiff's § 1981 Claim*

■ In the Third Cause of Action, plaintiff alleges defendant violated her civil rights under 42 U.S.C. § 1981 by discriminating against her on the basis of her race and national origin. *See* Compl. ¶ 25. Section 1981 prohibits discrimination based on race in the making and enforcement of contracts, *see Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), and extends to private as well as state actors in that regard. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 172, 109 S.Ct.

2363, 105 L.Ed.2d 132 (1989); *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582(1987). It well settled, however, that § 1981 does not prohibit discrimination on the basis of national origin. *See Al–Khazraji*, 481 U.S. at 613, 107 S.Ct. 2022; *Sanghvi v. Frendel*, 1999 WL 14708, at * 1 (E.D.N.Y. Jan. 6, 1999); *Adames v. Mitsubishi Bank, Ltd.*, 751 F.Supp. 1548, 1559 (E.D.N.Y.1990). Therefore, plaintiff's § 1981 claim, to the extent it is based on national origin discrimination, is dismissed.

F. *Breach of Contract*

■ Finally, Woodcock's Fourth Cause of Action alleges breach of contract based on Montefiore's "equal employment opportunity" statement contained in its employment manual.[5] However, neither the Complaint, nor her opposition papers identifies this statement. Although plaintiff avers that the statement was so "extensive" so as to create a "quasi-contractual duty" not to terminate her, she has failed to present any basis upon which to conclude that she was anything more than an employee at will. Her claim for breach of contract is therefore dismissed in its entirety. *See Cucchi v. New York City Off–Track Betting Corp.*, 818 F.Supp. 647, 651 (S.D.N.Y.1993) (holding that equal employment opportunity statement in employment application is not a "sufficiently express limitation on defendants [sic] right to fire plaintiff so as to allow plaintiff to sue defendant under breach of contract theory.").

### CONCLUSION

For the foregoing reasons, defendant's partial motion to dismiss is granted.

SO ORDERED.

---

5. Although the Complaint is completely vague as to which contract was allegedly breached—the collective bargaining agreement between Montefiore and plaintiff's Union, Montefiore's employment handbook, some other unidentified contract or a contract implied by law—plaintiff's memorandum of law clarifies her position that defendant allegedly breached their employment manual. *See* Pl.Mem. of Law at 10–11.