Roger G. DAIGLE, Plaintiff,

v.

Togo WEST, Secretary, Department
of Veterans Affairs, Defendant.

Roger G Daigle, Plaintiff,

v.

Togo West, Secretary, Department of
Veterans Affairs, Defendant.

Nos. 5:00–CV–189FJSDEP,
5:00CV1055FJSDEP.

United States District Court,
N.D. New York.

Sept. 30, 2002.

As Amended Nov. 6, 2002.

Roger G. Daigle, Syracuse, NY, plaintiff pro se.

Office of the United States Attorney (Paula Ryan Conan, Asst. U.S. Atty., of counsel), Syracuse, NY, for the United States.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. PROCEDURAL HISTORY

Plaintiff Roger G. Daigle commenced the lead case in this consolidated action on January 31, 2000. *See* Dkt. No. 1 in *Daigle v. West,* 5:00–CV–0189 (FJS)(DEP) ("00–CV–0189"). That complaint asserted numerous causes of action against multiple defendants, many of whom were employed at one time, or are currently employees, at the Syracuse Veterans Administration Hospital ("VA Hospital").

Plaintiff thereafter filed an amended complaint in that case pursuant to this Court's Order filed March 23, 2000 (00–CV–0189 at Dkt. No. 3), to which Defendants filed an answer. *See id.* at Dkt. No. 38.

On July 5, 2000, Plaintiff filed another lawsuit against Togo West, the Secretary of the Department of Veterans Affairs, and other Defendants. *See Daigle v. West,* 5:00–CV–1055 (FJS)(DEP) ("00–CV–1055"), Dkt. No. 1.[1] By Order filed October 20, 2000, Magistrate Judge David E. Pee-

---

1. Plaintiff states in his complaint that he attempted to file this lawsuit on July 3, 2000, but that the Clerk's Office was closed when he arrived to file the action. Defendant does not allege that Plaintiff's filing of this action was untimely.

bles consolidated 00–CV–1055 with 00–CV–0189, designating 00–CV–1055 as the member case.[2] *See* Dkt. No. 28 in 00–CV–1055.

On March 13, 2001, Defendants moved to dismiss the amended complaint filed in 00–CV–0189 and the complaint filed in 00–CV–1055 as against all Defendants with the exception of Secretary West. *See* Dkt. Nos. 53–55. Plaintiff opposed the motion to dismiss, *see* Dkt. Nos. 59 and 60, and filed a separate motion to amend his amended complaint in 00–CV–0189. *See* Dkt. Nos. 57–58. In response to Plaintiff's motion to amend, Defendants cross-moved to dismiss, in its entirety, Daigle's amended complaint in 00–CV–0189. *See* Dkt. Nos. 62–64. Plaintiff opposed Defendants' cross-motion, *see* Dkt. Nos. 65–66; Defendants filed a reply to such opposition. *See* Dkt. No. 67.

On June 15, 2001, Plaintiff filed a motion to amend the complaint filed in 00–CV–1055. *See* Dkt. Nos. 68–69. Defendants opposed that motion, *see* Dkt. No. 74; Plaintiff filed a reply to that opposition. *See* Dkt. No. 75.

On March 28, 2002, this Court issued a Memorandum–Decision and Order relating to such motions. *See* Dkt. No. 104 ("March, 2002 Order"). In that Order, the Court granted in part Defendants' motions to dismiss. Specifically, as to the amended complaint filed in 00–CV–0189, the Court granted Defendants' motion to dismiss causes of action one through eight as against all Defendants except Secretary West and dismissed all of the remaining claims in the amended complaint filed in 00–CV–0189. *See* March, 2002 Order at 7–10. Additionally, this Court granted Defendants' motion to dismiss the complaint filed in 00–CV–1055 as against all Defendants except Secretary West. *See id.* at 10–11.[3]

Before this Court issued its March, 2002 Order, Defendants filed a motion for summary judgment as to the complaint filed in 00–CV–1055. *See* Dkt. No. 84. Subsequent to the March, 2002 Order, Plaintiff submitted papers in opposition to the motion for summary judgment, *see* Dkt. Nos. 106–108, to which Defendant filed his reply. *See* Dkt. No. 110.[4]

## II. BACKGROUND

Plaintiff began working as a medical clerk for the VA Hospital in its surgical intensive care unit ("SICU") in May, 1991.[5] At the time, Plaintiff was fifty years old and held a Master's Degree in Business Administration. In the summer of 1991, Plaintiff began working with Eva Homeyer, a registered nurse in the SICU. Plaintiff alleges that from that time until about October, 1992, Homeyer sexually harassed him. As a result, on December 1, 1992, Plaintiff filed a written complaint of employment discrimination, attributable to his sex, with the Veterans Administration, which was designated as case no. 93–1620.[6]

2. Due to this consolidation, all items submitted to the Court for filing in either 00–CV–0189 or 00–CV–1055 since October 20, 2000, have been both filed and docketed in 00–CV–0189.

3. The Court denied Plaintiff's motions to amend. *See* March, 2002 Order at 11–15.

4. Since this Court dismissed all Defendants named in the complaint filed in 00–CV–1055 with the exception of Secretary West after the motion for summary judgment was filed but prior to the filing of the reply memorandum, the reply brief was properly submitted only on behalf of Defendant West.

5. Except as otherwise indicated, the factual background provided herein is derived from the statements of undisputed facts that the parties submitted with their respective papers. *See* Dkt. Nos. 86, 107.

6. A copy of that complaint is attached to Dkt. No. 88 at Exhibit "A–2a."

Equal Employment Opportunity Investigator Jesse Raymond began investigating Plaintiff's claim of harassment in June 1993, and on August 9, 1993, he issued his report regarding Plaintiff's claims. *See* Investigative Summary and Analysis of Investigator Raymond, dated August 9, 1993, Dkt. No. 88 at Exhibit "B–1a." [7] In that report, Investigator Raymond found that although Plaintiff established a *prima facie* case of sexual harassment/discrimination, his case was adequately rebutted by other employees of the VA Hospital. *See id.* Investigator Raymond concluded that

> [i]t appears that Eva Homeyer did harass the complainant because of him being different and that he was unable to perform and fit-in as she would have preferred. But, it was not due to him being male. However, the allegations failed to be proven with a preponderance of evidence worthy of a positive recommendation. Therefore, I recommend a finding of no discrimination.

*See id.* at Part IV.

On September 11, 1993, Plaintiff requested a hearing with the Equal Employment Opportunity Commission ("EEOC") regarding his complaint. Thereafter, Plaintiff and Mark Antinelli, the assistant personnel officer for the VA Hospital, met to discuss the possibility of reaching a settlement relating to Plaintiff's claims. These discussions culminated in a Settlement Agreement between Plaintiff and the VA Hospital regarding case no. 93–1620.[8]

*See* Complaint at Exhibit "A" ("Settlement Agreement"). Under the terms of the Settlement Agreement, which was executed on and effective as of December 10, 1993, the parties agreed to settle EEO Complaint 93–1620 in exchange for the consideration set forth in the Settlement Agreement.

On July 20, 1995, Plaintiff filed a written request to re-open EEO Complaint 93–1620 ("July, 1995 request to re-open"). In that request, Plaintiff claimed that the Settlement Agreement had been breached because (1) he was wrongfully forced to undergo "medical and psychiatric exams" by management at the VA Hospital;[9] (2) he had been subjected to acts of intimidation; harassment and abuse; (3) he and patients of the VA Hospital were subjected to offensive names, jokes and ridicule; (4) his car had been vandalized; (5) co-workers had "gone through [his] personal effects;" and (6) his new coat had been thrown in the trash. *See* Complaint at Exhibit "G."[10]

On June 12, 1996, the Department of Veterans Affairs ("DVA") issued a determination regarding Plaintiff's allegations that the Settlement Agreement had been breached. The letter noted that Plaintiff alleged that he had endured "continuous acts of reprisal since the signing of the Settlement Agreement" but determined that, pursuant to 29 C.F.R. § 1614.504(c), Plaintiff's allegations of subsequent acts of

---

7. Although Defendant did not identify this exhibit to Dkt. No. 88, the Court refers to Investigator Raymond's summary regarding Plaintiff's claim of discrimination as Exhibit "B–1a."

8. At his deposition, Plaintiff stated that there were "a series of back and forth negotiations between me and Antinelli regarding the settlement agreement." *See* Transcript of Deposition of Roger G. Daigle, dated February 12, 2001, attached to Dkt. No. 88 ("Daigle Tr."), at 158.

9. On July 11, 1995, Plaintiff underwent a fitness for duty examination; the following week he underwent a psychiatric examination. *See* Complaint at ¶ 40 & Exhibit "J;" Daigle Tr. at 226.

10. The Court will refer to the allegations raised in the July, 1995 request to re-open that are also asserted in the complaint filed in 00–CV–1055 as the "July, 1995 claims."

discrimination were to be processed as separate complaints and did not entitle him to re-open the Settlement Agreement. *See* Letter from DVA to Daigle, dated June 12, 1996, reproduced at Complaint, Exhibit "F." The DVA therefore concluded that the Settlement Agreement had not been breached. *See id.*[11]

On July 9, 1996, Plaintiff appealed that decision to the EEOC. *See* Complaint at Exhibit "E." On October 10, 1997, the EEOC issued a decision in which it affirmed the DVA's finding that the Settlement Agreement had not been breached. *See id.* at Exhibit "D." That decision also noted that the allegations of discrimination that Plaintiff cited in support of his request to re-open EEO Complaint 93–1620 all occurred subsequent to the execution of the Settlement Agreement and were therefore properly considered as separate complaints of discrimination under 29 C.F.R. § 1614.106. *See* Complaint at Exhibit "D." Plaintiff filed a request for reconsideration of that decision, *see id.* at Exhibit "C;" however, the EEOC denied that request on March 30, 2000. *See id.* at Exhibit "B." In that decision, the EEOC notified Plaintiff of his right to file a civil action in this District within ninety days of the date Plaintiff received the EEOC's decision.

In his complaint filed in 00–CV–1055, Plaintiff argues, *inter alia*, that the Settlement Agreement is unenforceable because he was pressured and coerced into entering into such agreement and, alternatively, that the Settlement Agreement should be enforced and this Court find that it was breached by the VA Hospital. *See* Complaint at ¶¶ 3, 9, 14–15.

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

The Court first considers which of the claims Plaintiff asserted in 00–CV–1055 may properly be considered in light of the exhaustion rule applicable to cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII").

As then-Chief Judge Thomas J. McAvoy noted:

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts*, 990 F.2d at 1401 (citing *Stewart v. United States Immigration and Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir.1985)); *see also Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 613–14 (2d Cir.1999); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir.1998).

*Findlay v. Reynolds Metals Co.*, 82 F.Supp.2d 27, 32 (N.D.N.Y.2000).

Plaintiff administratively exhausted and raised the July, 1995 claims in the complaint filed in 00–CV–1055. *See, e.g.*, Complaint at ¶¶ 26, 32–33. However, Plaintiff also alleges that he has been subjected to acts of reprisal "from 1992 through the present date." *See id.* at ¶ 73.[12]

A federal district court may only properly consider claims that were not administratively exhausted if the conduct subsequent to the EEOC charge is "reasonably related" to the claims raised in the EEOC charge. *Findlay*, 82

---

11. The DVA noted in its letter that, since signing the Settlement Agreement, Plaintiff had filed three separate discrimination complaints in which he alleged reprisal arising out of his employment at the VA Hospital.

*See* Letter from DVA to Daigle, dated June 12, 1996, reproduced at Complaint, Exhibit "F."

12. Daigle signed his complaint on July 5, 2000. *See* Complaint at 26.

F.Supp.2d at 32 (citations omitted). The Second Circuit has recognized three instances when allegations not specifically alleged in the administrative charge are nonetheless "reasonably related" to the charge of discrimination so as to excuse strict adherence to the exhaustion requirement. The first category of "reasonably related" claims relates to allegations where the complained-of conduct can reasonably be expected to grow out of the charge of discrimination and therefore fall within the scope of the EEOC investigation. *See Butts v. City of N.Y. Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1402 (2d Cir.1993) (citing *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978)) (other citation omitted). "The second type of 'reasonably related' claim is one alleging retaliation by an employer against an employee for filing an EEOC charge." *Id.* (citing *Malarkey v. Texaco, Inc.*, 983 F.2d 1204 (2d Cir. 1993)) (other citations omitted).[13] " 'The third type of reasonably related claim is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.' " *Coleman v. Bd. of Educ.*, No. 96 CIV. 4293, 2002 WL 63555, *3 (S.D.N.Y. Jan. 16, 2002) (quoting [*Butts*, 990 F.2d] at 1401–02; *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir.1984).[14]

In light of the foregoing, this Court must discern from Plaintiff's *pro se* complaint those acts of reprisal which he did not specifically reference in his July, 1995 request to re-open and then consider whether any such claims may properly be asserted in this action despite his failure to exhaust them.

■ Plaintiff claims that Dr. Ispahani wrongfully diagnosed him as having a condition of "intense paranoia." *See* Complaint at ¶ 49. That incident occurred subsequent to Plaintiff's EEO Complaint and could reasonably be expected to grow out of the charge of discrimination, which alleged, in part, that although Plaintiff was "generally an accommodating person who generally puts up with a lot rather than offend," *see* Dkt. No. 88 at Exhibit "A-2a-2," Homeyer had been "unrelenting" in her sexual harassment of Plaintiff, and had "attempt[ed] to incite others against [Plaintiff]." *See id.* at Exhibit "A-2a-2, 3." Thus, this claim may be considered despite Plaintiff's failure to exhaust it. *See Dortz v. City of New York*, 904 F.Supp. 127, 140–41 (S.D.N.Y.1995) (plaintiff's claim of retaliation was "reasonably related" to that which was previously alleged in plaintiff's EEOC charges, thereby allowing for judicial redress of such claims).

■ However, most of the other allegations in Plaintiff's complaint relate to matters that he claims occurred *prior to* the filing of his EEO Complaint 93–1620. *See, e.g.*, Complaint at ¶¶ 27–32, 35,[15] 38–42, 45–48, 54–55.[16] The exception to the exhaus-

---

**13.** For this exception to apply, however, the plaintiff must allege specific linkage between the filing of an EEO charge and the acts of retaliation about which he complains. *See Alfano v. Costello*, 294 F.3d 365, 382 (2d Cir.2002).

**14.** This final category "implicitly recognizes the cost to a plaintiff of requiring exhaustion in circumstances where the likelihood of a successful settlement is limited." *Butts*, 990 F.2d at 1403.

**15.** One of the many allegations in paragraph 35 of the complaint filed in 00–CV–1055 relates to the actions of Philip Thomas in August, 1995. *See id.* Since that claim relates to Dr. Ispahani's diagnosis of Plaintiff, the Court finds that it is reasonably related to EEO Complaint 93–1620.

**16.** There are many allegations in Plaintiff's complaint in 00–CV–1055 that are not specifically referenced herein because it is impossible for the Court to discern when the actions

tion rule concerning matters that are "reasonably related" to the EEO complaint " 'only applies to .. acts occurring *subsequent to* the filing of the administrative charge.' " *Woodcock v. Montefiore Med. Ctr.*, 48 F.Supp.2d 231, 235 n. 4 (E.D.N.Y. 1999) (quotation omitted) (emphasis added); *see Fitzgerald v. Henderson*, 36 F.Supp.2d 490, 502 (S.D.N.Y.1998) (collecting cases).[17]

Accordingly, the Court finds that it is without jurisdiction to consider those claims asserted in the complaint filed in 00–CV–1055 which relate to conduct that occurred prior to July 20, 1995.

■ Next, in addition to matters that occurred before Plaintiff filed his EEO Complaint, his *pro se* pleading also references alleged acts of reprisal that occurred after he brought that complaint. For example, Plaintiff contends that (1) he is only permitted to enter the VA Hospital under police escort, *see* Complaint at ¶¶ 59, 61–62;[18] (2) he is being denied affordable mental health care outside the VA Hospital; (3) outside mental health care providers are wrongfully required to contact "VA police" in order to arrange payment for his visits; and (4) he was wrongfully terminated from his job at the VA Hospital. *See id.* at ¶¶ 61–62.

As to the security escort requirement, the submissions before the Court in the lead case to this consolidated action indicate that such requirement was imposed because Plaintiff had threatened the Director of the VA Hospital. *See* Dkt. No. 3

in 00–CV–0189 at Exhibit "G" at ¶ 10. Nothing before the Court indicates that the requirement that a police escort accompany Plaintiff whenever he seeks services from the VA Hospital is related, in any way, to EEO Complaint 93–1620. Thus, the Court concludes that this claim is not properly raised in 00–CV–1055. *See Findlay*, 82 F.Supp.2d at 32.

As to the remaining acts of reprisal, which Plaintiff claims occurred after July 20, 1995, nowhere in either his complaint or in his papers in opposition to the present motion for summary judgment does Plaintiff provide factual allegations relating to these claims upon which this Court could properly find that they are reasonably related to EEO Complaint 93–1620. A plaintiff has the burden of affirmatively demonstrating that a court has jurisdiction over his claims. *See Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir.2002) (citations omitted); *Park Place Entm't Corp. v. Arquette*, 113 F.Supp.2d 322, 323 (N.D.N.Y. 2000) (citation omitted); *McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1107 (10th Cir.2002) ("because failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust" (citation omitted)).

With the exception of Plaintiff's claim regarding Dr. Ispahani's conduct, the Court finds that Plaintiff has not established that the claimed acts of reprisal which occurred subsequent to the filing of

---

about which Plaintiff complains allegedly occurred.

**17.** As the *Woodcock* court noted, "[a] plain reading" of *Butts*, which distilled the "reasonably related" rule, reveals that the "reasonably related" rule applies only to conduct committed subsequent to the EEOC filing. *Woodcock*, 48 F.Supp.2d at 235 n. 4 (citing *Butts*, 990 F.2d at 1401).

**18.** Plaintiff was apparently advised of this requirement in October, 1996. *See* Daigle Tr. at 494. He further testified that the VA Hospital suspended this requirement; however, it was reinstated in late December, 1996 or early January, 1997, when management at the VA Hospital discovered that Plaintiff had met with a patient who would have supported Plaintiff's claims of patient abuse at the hospital. *See id.* at 496–502, 506.

EEO Complaint 93–1620 are reasonably related to that charge. Thus, this Court cannot consider such claims in 00–CV–1055 because they do not fall within any of the three exceptions to the exhaustion requirement discussed in *Butts* and its progeny.

In light of the above, the Court finds that it is without jurisdiction to consider any of the claims asserted in 00–CV–1055 with the exception of the July, 1995 claims and the allegations in 00–CV–1055 which relate to Dr. Ispahani's diagnosis of Plaintiff. *See Oshinsky v. New York City Hous. Auth.*, No. 98 CIV 5467, 2000 WL 218395, *14 (S.D.N.Y. Feb. 23, 2000) (dismissing for lack of subject matter jurisdiction several of plaintiff's Title VII claims where plaintiff failed to raise same in EEO complaint); *Patrick v. Henderson*, 255 F.3d 914, 915 (8th Cir.2001) (district court has jurisdiction to hear claims that were properly exhausted notwithstanding fact that court does not have jurisdiction over other claims that were not exhausted).

The Court now considers whether Defendant is entitled to summary judgment as to the claims that Plaintiff properly asserted in the complaint filed in 00–CV–1055.

**B. Legal Standards**

The standards governing motions for summary judgment are well-settled. A court may not properly grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

In assessing the record to determine whether there is a genuine issue as to any material fact, the district court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989). In ruling on the motion, the court is not entitled to weigh the evidence. *See Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir. 1997); *May Ship Repair Contracting Corp. v. Barge Columbia New York*, 160 F.Supp.2d 594, 598 (S.D.N.Y.2001). Rather, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Beatie*, 123 F.3d at 711; *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir.1988).

**C. Merits of Defendant's Motion**

Defendant claims that Plaintiff freely entered into the Settlement Agreement and that federal regulations provide a means by which Plaintiff can assert his claims of retaliatory conduct. Defendant further argues that since the parties resolved claims raised in Plaintiff's complaint in 00–CV–1055 in the Settlement Agreement, this Court should affirm the EEOC's finding that Plaintiff did not establish that the VA Hospital did not breach the Settlement Agreement. *See* Dkt. No. 85 at 13.

Plaintiff claims that the Settlement Agreement is "inherently unenforceable." *See* Complaint at ¶ 3. He also argues, in the alternative, that enforcement of the Settlement Agreement requires that the DVA re-open EEO Complaint 93–1620. *See* Dkt. No. 106 at 8.

The Court initially considers whether the Settlement Agreement is binding upon the parties and, if so, whether Defendant is entitled to summary judgment on Plaintiff's remaining claims.

### 1. Validity of Settlement Agreement

█ Federal law governs whether settlement agreements in employment discrimination actions brought pursuant to Title VII are valid. *Cf. Sears, Roebuck & Co. v. Sears Realty Co.*, 932 F.Supp. 392, 398 (N.D.N.Y.1996) (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir.1981)). Additionally, where a party has raised a settlement agreement as a defense to a lawsuit, the court must make factual determinations as to the issues surrounding the agreement. *See Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 349 (D.C.Cir.1997) (citation omitted).

█ In considering Plaintiff's claim that he was pressured and coerced into signing the Settlement Agreement, *see* Complaint at ¶ 14, this Court notes that the Second Circuit utilizes a "totality of circumstances" test in order to determine whether a release of Title VII claims is both knowing and voluntary. *See Reid v. IBM Corp.*, No. 95 Civ. 1755, 1997 WL 357969, *5 (S.D.N.Y. June 26, 1997) (citing *Nicholas v. Nynex, Inc.*, 929 F.Supp. 727, 730 n. 1 (S.D.N.Y.1996)). Factors relevant to this inquiry include

(1) the Plaintiff's education and business experience; (2) the amount of time Plaintiff had possession of or access to the agreement before signing it; (3) the role of the Plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the Plaintiff was represented by or consulted with an attorney; and (6) whether the consideration given, in exchange for the waiver of claims, exceeds employee benefits to which the employee was already entitled by law.

*Tung v. Texaco Inc.*, 150 F.3d 206, 208 (2d Cir.1998); *see Bormann v. AT & T Communications*, 875 F.2d 399, 403 (2d Cir. 1989); *Livingston v. Bev–Pak, Inc.*, 112 F.Supp.2d 242, 247 (N.D.N.Y.2000); *Reid*, 1997 WL 357969, at *5.

█ Consideration of these factors leads this Court to conclude that Plaintiff knowingly and voluntarily executed the Settlement Agreement. Plaintiff is college-educated and holds a Master's Degree in Business Administration. The agreement was, by Plaintiff's own admission, the product of discussion and negotiations between himself and Antinelli, and Plaintiff successfully negotiated the removal of a provision in the agreement that would have prevented him from disclosing the terms of the agreement. *See* Daigle Tr. at 160–63. Additionally, as is discussed more fully below, the Court finds that the contents of the Settlement Agreement are both clear and unambiguous and that it afforded Plaintiff the right to return to his original SICU assignment upon his request. *See* Settlement Agreement at ¶ 6.[19]

Since the totality of circumstances establish that Plaintiff freely executed the Settlement Agreement and that both parties provided valid consideration relating to same, the Court concludes that the Settlement Agreement between Plaintiff and the VA Hospital is enforceable.[20]

### 2. The EEOC's finding that the Settlement Agreement had not been breached

In finding that the Settlement Agreement had not been breached, and therefore denying Plaintiff's request to re-open

---

19. At some point, Plaintiff had been re-assigned from his position at the SICU. *See* Investigative Summary of Investigator Raymond at unnumbered p. 4. However, it is not clear to this Court when such re-assignment occurred.

20. In opposing Defendant's motion for summary judgment, Plaintiff now appears to concede the validity of the Settlement Agreement. *See* Affidavit of Roger G. Daigle, sworn to May 24, 2001, Dkt. No. 108, at ¶¶ 11–14.

EEO Complaint 93–1620, both the DVA and the EEOC implicitly found that 29 C.F.R. § 1614.504(c) precluded a finding that the Settlement Agreement had been breached. That section of the Code of Federal Regulations, which is entitled "Compliance with Settlement Agreements and Final Action," provides, in part, that when a party believes that the agency has failed to comply with the terms of a settlement agreement or decision

(c) Prior to rendering its determination, the [EEOC] may request that parties submit whatever additional information or documentation it deems necessary or may direct that an investigation or hearing on the matter be conducted. If the [EEOC] determines that the agency is not in compliance and the noncompliance is not attributable to acts or conduct of the complainant, it may order such compliance or it may order that the complaint be reinstated for further processing from the point processing ceased. Allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints under § 1614.106 or § 1614.204, as appropriate, rather than under this section.

29 C.F.R. § 1614.504(c).

Defendant argues that all of the allegations in the July, 1995 claims are based upon Plaintiff's claims that employees of the VA Hospital engaged in subsequent acts of discrimination and/or retaliation, and therefore Plaintiff was required to file separate complaints with the EEOC regarding such allegations, rather than seek to re-open EEO Complaint 93–1620. *See* Dkt. No. 85 at 15–17.

■ Generally, an agency's interpretation of a settlement agreement is entitled to deference under the principles enunciated in *Chevron U.S.A., Inc. v. Natural Res. Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See New York Inst. of Dietetics, Inc. v. Riley,* 966 F.Supp. 1300, 1312 (S.D.N.Y.1997) (citation omitted). However, federal courts must first make a *de novo* determination of whether a settlement agreement is ambiguous; where the agreement is unambiguous, the court need not review the agency's interpretation as to such agreement but instead should make its own determination regarding the agreement's terms. *See id.* (citations omitted).

■ In the present case, the Settlement Agreement clearly provides, *inter alia,* that the VA Hospital would assure Plaintiff's right (1) "to work in an environment which is free from sexual harassment" and (2) "not [to] be subjected to reprisal for his use of the discrimination complaint process." *See* Settlement Agreement at ¶¶ 3, 7. Since the terms of the Settlement Agreement are clear and unambiguous, this Court should not look beyond the four corners of the agreement itself to interpret the parties' intentions or read additional restrictions into the agreement. *See, e.g., John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994).[21]

Moreover, were this Court to add as a gloss to the Settlement Agreement the cited regulations (as Defendant urges), paragraphs three and seven of the Settlement Agreement would effectively be rendered meaningless. Interpreting the Settlement Agreement in such a manner "violates [a] cardinal principle of contract construction: that a document should be read to give effect to all its provisions

---

**21.** The Settlement Agreement never references any provisions of the Code of Federal Regulations, and the parties agreed that the terms contained in the Settlement Agreement constituted the parties' entire agreement to the exclusion of all other terms. *See* Settlement Agreement at ¶ 7(e).

and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton,* Inc., 514 U.S. 52, 63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (citations omitted); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL—CIO,* 970 F.2d 1132, 1136 (2d Cir.1992) (courts "must avoid an interpretation of an agreement that renders one of its provisions superfluous" (citations omitted)); *see also* Restatement (Second) of Contracts § 203(a) (1981) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

■ Next, although not raised in Defendant's motion, the Court notes that the portions of the Settlement Agreement that Plaintiff claims Defendant breached; i.e., the VA Hospital's assurances of Plaintiff's right to work in an environment free from sexual harassment and to not subject him to reprisal for his use of the discrimination process may be viewed as Defendant's pre-existing duties and therefore not valid consideration. *E.g., Airlines Reporting Corp. v. S & N Travel, Inc.,* 58 F.3d 857, 864 (2d Cir.1995) ("performance of [ ] pre-existing duty cannot suffice as consideration for a valid agreement") (citing 3 Williston on Contracts § 7:36, at 569); *LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc.,* 92 F.Supp.2d 119, 129 (E.D.N.Y.2000) (citations omitted). However, there was other, valid consideration present in the Settlement Agreement which rendered it enforceable. For example, in exchange for Plaintiff's promise to settle EEO Complaint 93–1620, the VA Hospital agreed to allow Plaintiff to return to his original assignment in the VA Hospital's SICU within one year from the date the Settlement Agreement was executed. *See* Settlement Agreement at ¶ 6.

■ It is hornbook law that although some of the consideration to a contract may be invalid, a contract is enforceable so long as a portion of the consideration provided in same is valid. *See* 2 Corbin, Contracts § 5.13, p. 63 (1995) ("one valid consideration is enough"); *see, e.g., Spaulding v. Benenati,* 86 A.D.2d 707, 708, 446 N.Y.S.2d 543 (3d Dep't) ("[c]ontracts involving multiple promises are enforceable, even though one of the bargained for promises is void, so long as the remaining promises are sufficient consideration for what was given in exchange") (citing 1 Williston, Contracts [3d ed.], § 134, p 566; § 137A, p 594; Restatement, Contracts (2d), § 80, pp 204–205), *appeal dismissed,* 56 N.Y.2d 803, 452 N.Y.S.2d 402, 437 N.E.2d 1159 (1982).

■ Defendant also appears to argue that this Court should defer to the determinations of the DVA and EEOC that the VA Hospital did not breach the Settlement Agreement. *See* Dkt. No. 85 at 17. However, it has been held that no deference is to be afforded to a finding by the DVA on the issue of whether a Settlement Agreement has been breached. *See Saksenasingh,* 126 F.3d at 350. Although in the present case the EEOC subsequently affirmed the DVA's finding that no breach had occurred, the Court notes that "there should be no confusion that [EEOC investigators] cannot usurp the judiciary's role in determining whether there is a genuine issue of material fact." *Williams v. Alabama Indus. Dev't Tr'g,* 146 F.Supp.2d 1214, 1224 (M.D.Ala.2001) (citing *Dickerson v. Metro. Dade County,* 659 F.2d 574, 579 (5th Cir.1981) ("in Title VII litigation, the district court reviews the evidence *de novo,* independent of any determination by the EEOC")) (other citation and footnote omitted); *Allen v. Crosby,* 416 F.Supp. 1092, 1094 (E.D.Pa.1976) (where plaintiff has exhausted his administrative remedies,

he is entitled to a trial *de novo* in federal court) (citing *Ettinger v. Johnson*, 518 F.2d 648 (3d Cir.1975)), *aff'd*, 556 F.2d 564 (3d Cir.1977).

Defendant has not cited, and this Court has not found, authority which stands for the proposition that federal district courts are to afford deference to a finding by the EEOC as to whether a party has breached the terms of a Settlement Agreement. Since this Court finds that no such deference is warranted, it considers whether this Court may find, as a matter of law, that the Settlement Agreement was not breached.

 It is well-settled that whether a breach of a contract has occurred is a question of fact that cannot properly be resolved in the context of a motion for summary judgment. *See United States for Use of N. Maltese & Sons, Inc. v. Juno Constr. Corp.*, 759 F.2d 253, 255 (2d Cir. 1985) ("[i]t is hardly necessary to cite authority for the proposition that whether there has been a breach of contract is a question of fact" (citation omitted)); *Inner City Broad. Corp. v. Galaxy Broad.*, No. 95 CIV 0656, 1996 WL 328744, *2 (S.D.N.Y. June 13, 1996) (where facts surrounding question of whether defendant breached contract with plaintiff remain in dispute, motion for summary judgment denied); *Germain v. Staten Island Boat Sales, Inc.*, 248 A.D.2d 507, 507, 669 N.Y.S.2d 893 (2d Dep't 1998) ("the Supreme Court correctly denied that branch of the plaintiff's motion which was for summary judgment on the cause of action alleging breach of contract, as there is a question of fact as to whether the defendant materially breached the contract" (citations omitted)); *Owens v. West*, 182 F.Supp.2d 180, 195–97 (D.Mass.2001) (denying motion for partial summary judgment where genuine issues of material fact exist as to liability of the DVA concerning breach of EEOC Settlement Agreement).

Since the Court cannot find, as a matter of law, that the claims Plaintiff raised in his July, 1995 request to re-open (as well as his claims relating to Dr. Ispahani) do not constitute a breach of the terms of the Settlement Agreement, the Court denies Defendant's motion for summary judgment as it relates to such claims.

## IV. CONCLUSION

In light of the foregoing, the Court dismisses, for lack of subject matter jurisdiction, all claims asserted in Plaintiff's complaint filed in 00–CV–1055, with the exception of those which were specifically mentioned in his July, 1995 request to re-open as well as his claim relating to Dr. Ispahani's diagnosis of him. As to those claims, this Court has subject matter jurisdiction and denies Defendant's motion for summary judgment regarding such claims.

According, after carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.** The Court **DENIES** the motion to the extent that it seeks summary judgment as to the July, 1995 claims, as well as Plaintiff's claims regarding Dr. Ispahani's diagnosis of him and **GRANTS** the motion as to **ALL OTHER CLAIMS** asserted in 00–CV–1055 with respect to the member case due to this Court's lack of subject matter jurisdiction over such claims.

**IT IS SO ORDERED.**